IN THE

UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF INDIANA

FILED
U.S. DISTRICT COURT
INDIANAPOLIS INDIANA

OCT 26 PM 4:13

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

SHERMAN LAMONT FIELDS,

          Petitioner,

v.

2-14-CV-315 WTL WGH

UNITED STATES OF AMERICA,

          Respondent

---

THIS IS AN "EXTRAORDINARY WRIT" PURSUANT TO 28 U.S.C. § 1651 & RULE 20

---

THIS IS A CAPITAL CASE

(DEATH PENALTY)

SHERMAN LAMONT FIELDS
#15651-180
USP Terre Haute
P.O. Box 33
Terre Haute, Indiana
      47803
      (Pro Se)

CAPITAL CASE (DEATH PENALTY)
QUESTION(S) PRESENTED

1. When the 5th Circuit Court of Appeals refused to consider Petitioner's timely Pro Se brief and Motion(s) petitioner appealed that decision to the Supreme Court; Did the Supreme Court make a mistake by instructing petitioner that he would have to file in the lower Courts when Petitioner was already attempting to challenge the lower court's decision and only the Supreme Court had jurisdiction? And can the Court(s) force a defendant to rely on a brief that the defendant "strenuously object to"? ...Pg.3

2. Can the 5th Circuit refuse to accept a timely meritorious Pro Se brief (Because defendant have attorney's) even when defendant states that he would relieve attorney's of their duty, and then deny Petitioner on the merits claiming that he didn't assert issues that's clearly asserted in the timely meritorious brief that the Court refused to accept?

And when a Court refuse to accept a timely meritorious Pro Se brief, and then deny the Petitioner on the merits based on an Unreasonable Determination of the facts, do it violate the strictures of Gregg v. Georgia? .....pg. 6

3. When forensics evidence (other than DNA) prove that the Petitioner is Actually and/or factually innocent can the District Court and/or the Circuit Court of Appeals deny a Pro Se Petition(er) access to the Court(s)?......pg. 9

4. Can a jury's verdict, combined with other evidence prove that the safeguards put in place in Gregg v. Georgia and its progeny,to protect from wrongful conviction was ineffective to protect Fields from a verdict influenced by passion, prejudice and other arbitrary factors?.....................pg. 10

5. When the prosecution oppose Certiorari based on evidence used to Defraud the lower Court(s), do that Fraud on the Court "trickle up" and make the Supreme Court the victim of that Fraud?

And when the Department of Justice is tricked into Aiding and Abetting that Fraud is the Department of Justice a victim of that Fraud as well?

Also Can the facts here in Fields case show that the safeguards put in place to protect from wrongful convictions in Gregg v. Georgia failed to protect Fields from this Fraud?..................pg. 13

I

6. If a defendant can show that the prosecution engaged in criminal conduct and solicited the defendant's murder via lethal injection while engaging in a criminal conspiracy can that constitute "extraordinary circumstances" for purposes of relief?

And can the facts herein show that the safeguards put in place in Gregg v. Georgia to protect against wrongful conviction failed to protect Fields from these criminal act(s)?......................pg. 19

7. When Judicial Bias at trial and on appeal lead to a fundamental miscarriage of justice can that constitute "extraordinary circumstances" that warrants an unbiased Court's intervention?

And can the facts herein show that the safeguards put in place in Gregg v. Georgia to protect against wrongful conviction failed to protect Fields from this Judicial Bias?........................pg. 23

8. Can an appeals court refuse to accept a timely Pro Se Brief and Motion(s) and deny the defendant his right to adjudicate a meritorious Brady Issue?

And do the Court(s) ruling render the safeguards put in place in Gregg v. Georgia to protect against wrongful conviction ineffective?...................pg. 28

9. Did the safeguards put in place in Gregg v. Georgia fail to protect Fields from an unreasonable application of the fact(s) and the law.........pg. 30

10. Did the safeguards put in place in Gregg v. Georgia fail to protect Fields from the devastating effects of the criminal act of perjury?............pg. 35

11. Do the facts of Fields' case render the Antiterrorism and Effective Death Penalty Act illegal and Unconstitutional?

And is the AEDPA illegal and Unconstitutional in all cases?...........pg. 39

12. Do the facts of Fields' case render the Death Penalty illegal and Unconstitutional?

And is the Death Penalty illegal and Unconstitutional in all cases?.....pg. 44

Petitioner is Sherman lamont Fields, a prisoner in custody under sentence of a court established by an Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution.

Respondent is the United States of America.

# TABLE OF CONTENTS

QUESTIONS PRESENTED............................................................. I-II

PARTIES TO THE PROCEEDINGS...................................................... III

TABLE OF CONTENTS.............................................................. IV-V

TABLE OF AUTHORITIES..................................................... VI,VII,VIII,IX

OPINIONS BELOW.................................................................. X

JURISDICTION................................................................... X

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED............................. X-1

STATEMENT OF THE CASE.......................................................... 1-2

REASONS FOR GRANTING THE WRIT.................................................. 3

1). This Court should grant this "extraordinary writ" because Fields was already appealing an Order from the 5th Circuit Court of appeals when the Supreme Court mistakenly informed Fields that he would have to file in a lower Court; And the mistake proved to be fatal for Fields....................... 3-6

2). This Court should grant this "extraordinary writ" because the 5th Circuit's refusal to accept Fields' timely pro se filings led to the violation of Gregg v. Georgia, 428 U.S. 153, 49 L.Ed. 2d 859, 96 S.Ct. 2909 (1976) and its progency, and undoubtedly proves that the safeguards put in place in Gregg to protect the innocent failed to protect Fields from the Court's Unreasonable Determination of the fact(s) and the law.....................................6-9

3). This Court should grant this "extraordinary writ" because minus the Constitutional violation(s) Fields is Actually innocent.....................9-10

4). This Court should grant this "extraordinary writ" because the safeguards put in place in Gregg v. Georgia and its progency failed to protect Fields from a conviction and death sentence influenced by passion, prejudice and other arbitrary factors....................................................10-13

5). This Court should grant this "extraordinary writ" because the safeguards put in place in Gregg v. Georgia and its progency failed to protect Fields from Fraud On The Court(s).................................................13-19

6). This Court should grant this "extraordinary writ" because the safeguards put in place in Gregg v. Georgia and its progency failed to protect Fields from criminal act(s) perpetrated against Fields by the Prosecution............. 19-23

7). This Court should grant this "extraordinary writ" because the safeguards put in place in Gregg v. Georgia and its progency failed to protect Fields from Judicial bias at trial and on appeal...................................... 23-28

8). This Court should grant this "extraordinary writ" because (a) The 5th Circuit's refusal to accept Fields' Pro Se brief allowed the prosecution's violation of Brady v. Maryland to go unadjudicated; And (b). The safeguards put in place in Gregg v. Georgia and its progency failed to protect Fields from the prosecution's violation of Brady..................................... 28-30

9). This Court should grant this "extraordinary writ" because the safeguards put in place in Gregg v. Georgia and its progency failed to protect Fields from the Court's unreasonable application of the law and the fact(s)............. 30-35

10). This Court should grant the "extraordinary writ" because the safeguards put in place in <u>Gregg v. Georgia</u> and its progency failed to protect Fields from the criminal act of perjury.............................. 35-38

11). The Antiterrorism and Effective Death Penalty Act (AEDPA) is illegal and Unconstitutional.............................................. 39-44

12). The Death Penalty is Illegal and Unconstitutional.................... 44-51

CONCLUSION.................................................................. 51

CASES         PAGE

Abu-Ali Abdur' Rahman v. Ricky Bell, 154 L.Ed. 2d 501, 537 U.S. 88(2002)..... 18, 19

Adarand, 515 U.S. at 227, 115 S.Ct. 1097, 132 L.ED. 2d 158................... 28

Allen v. Chicago Transit Auth., 317 F.3d 696, 703 (7th Cir. 2003)........... 17

Andrade v. Chojnacki, 338 F.3d 448 (July 14, 2003)......................... 23

Barefoot v. Estelle, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed 2d
                1090 (1983)......................................... :.... 38

Beets, 767 S.W. 2d at 734. " 180 F.3d 190:: Beets v. Johnson; June 28, 1999
                                           (5th Cir.).. 22

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963)......... 16, 28

Bracy v. Schoming, 286 F.3d at 410-11......................................... 27

Caperton v. A.T. Massey Coal Inc., __U.S.__, 129 S.Ct. 2252, 2259, 173 L.Ed. 2d
                                1208 (U.S. 2009).. 27

Chamberlain v. Ericksen, 744 F.2d 628, 630 (8th Cir. 1984), cert. denied, 470
                U.S. 1008, 84 L.Ed. 2d 387, 105 S.Ct. 1368 (1985)..... 5

Chambers v. NASCO, Inc., 501 U.S. 32, 44, 115 L.Ed. 2d 27, 111 S.Ct. 2123(1991) 19

Chicago Tribune Co. v. Bridgestone/Firestone Inc., 263 F.3d 1304-1309(11th Cir.
                                        2001). 7, 27

Clark v. Quarterman, 457 F.3d 441, 443 (5th Cir. 2006))....................... 7

County of Sacramento v. Lewis, 523 U.S. 833, 846-847, 118 S.Ct. 1708, 140
                      L.Ed. 2d 1043 (1998)........................... 43

Curran v. Delaware, 259 F.2d 707, 712-713 (3d Cir. 1958)...................... 13, 37

DeFunis v. Odegaard, 416 U.S. 312, 342, 94 S.Ct. 1204, 40 L.Ed. 2d 164(1974)... 28

Duest v. Singletary, 967 F.2d 472, 482 (11th Cir. 1992) vacated on other grounds,
                507 U.S., 113 S.Ct. 1940, 123 L.Ed. 2d 647 (1993)......... 10

Dunnigan, 507 U.S. at 94, 113 S.Ct. at 1116.................................. 21

Fields at ( 483 F.3d 313 )................................................... 30,31

Frederick v. Kirby Tankships Inc., 205 F.3d at 1287 (11th Cir. 2000)............ 38

Furman v. Georgia, (1972) 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726......... 11, 43,45 50

Gardens v. Stephens, Sup. Ct. #13-546 (2013) cert. pending (5th Cir. 8/2/13)... 10

Gardner v. Florida, 430 U.S. 349, 357-358, 97 S.Ct. 1197, 51 L.Ed. 2d
                          393 (1977)............ 45

Giglio v. U.S., 405, 150, 92 S.Ct. 763, 766, 31 L.Ed 2d 104 (1972)............ 38, 46

Godfrey v. Georgia, 64 L.Ed. 2d 398, 446 U.S. 420.......................... 48

Gregg v. Georgia............................................................. passim

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 88 L.Ed. 1250, 64
                                  S.Ct. 997 (1944).... 19

Herrera v. Collins, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed. 2d 203 (1993).. 22

Hinton v. Alabama, 188 L.Ed. 2d 1, __U.S.__ ........................................ 8

In re Davis, No. CV 409-130 (8/24/10)................................................ 10

In re Murchison, 349 U.S. at 136.................................................... 27

Johnson, 543 U.S., at 505, 125 S.Ct. 1141, 160 L.Ed. 2d 949.................... 28

Kennedy v. Louisiana, (2008) 554, U.S. 407, 128 S.Ct. 2641, 171 L.Ed. 2d
525............... 50

Kuhlman v. Wilson, 477 U.S. at 454 & n.17, 106 S.Ct. at 2627 & n.17............ 10

Kyles v. Whitley, 514 U.S. 419, 435, 131 L.Ed. 2d 490, 115 S.Ct. 1555 (1995)... 13,30,35,37

Lackey v. Texas, 514 U.S. 1045, 115 S.Ct. 1421 ................................ 49

Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1312 (11th Cir. 2000)....... 18 , 38

Liljeberg v. Health Service Acquisition Corp., (1988) 486 U.S. 847, 100 L.Ed.
2d 855, 108 S.Ct. 2194.......... 27-28

Maldonado v. Thaler, 625 F.3d 229, 236 (5th Cir. 2010))....................... 7

Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 176, 2 L.Ed. 60 (1803)......... 39,43,50 ,51,54

Melendez-Diaz v. Massachusetts, 557 U.S. 305, 319, 129 S.Ct. 2527, 174 L.Ed. 2d
314 (2009)....... 8

McLamore v. South Carolina, (1972)-US-, 34 L.Ed 2d 189, 93 S.Ct. 240.......... 50

McNabb v. U.S., 318 U.S. 332, 347, 87 L.Ed 819, 63 S.Ct. 608................. 37

Metro Broadcasting, Inc. v. FCC, 497 U.S. 547, 609, 110 S.Ct. 2997, 111 L.Ed.
2d 445 (1990)..... 28

Mobley v. Head, 306 F.3d 1096, 1100-1105 (CA11 2002)......................... 18

Mooney v. Holohan, 294 U.S. 103, 113 (1935)................................. 10

Morales v. Bezy, 499 F. 3d 668 ( 7th Cir. 2007)............................. 1, 53

Napue v. Illinois, 360 U.S. 264, 269, 3L.Ed 2d 1217, 79 S.Ct. 1173 (1959)..... 38, 46

Neder v. U.S., 527 U.S.1, 25, 119 S.Ct. 1827, 1841, 144 L.Ed. 2d 35 (1999)).. 18 , 38

Palmore v. Sidoti, 466 US 429, 433, 80 L.Ed. 2d 421, 104 S.Ct. 1879 (1984)... 28

Pfizer Inc. v. Int'L Rectifier Corp., 538 F.2d 180, 195 (8th Cir. 1976), cert.
denied, 429 U.S. 1040, 97 S.Ct. 738, 50
L.Ed. 2d 751 (1977)................ 19 , 38

Pippin v. Dretke, 434 F.3d 782, 787 (5th Cir. 2005)........................ 8

Price v. Johnson, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).......... 5

Pyle v. Kansas, 317 U.S. 213, 87 L.Ed. 214, 63 S.Ct. 177 (1942)............. 13, 37

Ring v. Arizona, 536 U.S. 584, 614, 122 S.Ct. 2428, 153 L.Ed. 2d 556 (2002)... 45, 54

Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978)................ 18 , 38

Sawyer v. Collins, 986 F.2d 1493, 1497 (5th Cir. 1993)...................... 38

Sawyer v. Whitley, 505 US 333, 120 L.Ed. 2d 269, 112 S.Ct. 2514 (1992)........ 54

Schlup v. Delo, 513 U.S. 298, 314-16, 130 L.Ed. 2d 808, 115 S.Ct. 851 (1995).. 10 , 44

Scutieri v. Paige, 808 F. 2d at 794 (11th Cir. 1987)........................ 38

Smith v. Black, 904 F.2d 950, 967 (5th Cir. 1990), vacated, 503 U.S. 930, 112
    S.Ct. 1463, 117 L.Ed 2d 609 (1992)............................ 29

Smith v. Kemp, 715 F.2d 1459, 1463 (11th Cir.), cert. denied, 464 U.S. 1003,
    104 S.Ct. 510, 78 L.Ed 2d 699 (1985).......................... 34, 46

Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed 2d 367 (1992)...... 29

Thomas v. Gen. Motors Acceptance Corp., 288 F.3d 305, 306-07 (7th Cir. 2002).. 17

Trop v. Dulles (1958) 356 US 86, 2 L.Ed. 2d 630, 78 S.Ct. 590 ............... 50

U.S. v. Auten, 632 F.2d 478, 481 (5th Cir. 1980))............................ 29

U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed 2d 481 (1985).......... 29

U.S. v. Blackthorne, 378 F.3d 449, 454 (5th Cir. 2004)...................... 21

U.S. v. Bell, 577 F.2d 1313, 1315 n.2 (5th Cir. 1978), cert. denied, 440 U.S.
    946, 99 S.Ct. 1422, 59 L.Ed. 2d 634 (1979)..................... 21

U.S. v. Cardwell, 433 F.3d 378, 390, 91 (4th Cir. 2005)...................... 21

U.S. v. Chiavola, 744 F.2d 1271, 1274 (7th Cir. 1984)....................... 37

U.S. v. Como, 53 F.3d 87, 90 (5th Cir. 1995)................................ 29

U.S. v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed 2d 445
    (1993)..................................................... 37

U.S. v. Fields, 483 F.3d 313 (5th Cir. 2007)................................ 12

U.S. v. Hasson, 333 F.3d at 1270-71........................................ 18,38

U.S. v. Lanford, 838 F.2d 1351, 1355 (5th Cir. 1988)....................... 29

U.S. v. Moore, 525 F.3d 1033 (11th Cir. 2008).............................. 19

U.S. v. Percel, 553 F.3d 903 (Dec. 23, 2008).............................. 19

U.S. v. Razo-Leora, 961 F.2d 1140, 1148 n.6 (5th Cir. 1992)................ 21

U.S. v. Sellner, 2014 BL 350656, 8th Cir., No. 13-3794 12/15/14........... 5

U.S. v. Sutherland, 463 F.2d 641, 645 (5th Cir.), cert. denied, *1569409 U.S.
    1078, 93 S.Ct. 698, 34 L.Ed. 2d 668 (1972)................... 21

U.S. v. Walters, 351 F. 3d 159, 169 (5th Cir. 2003)........................ 28

Wedra v. Thomas, 671 F.2d 713, 717 n.1 (2d 1982).......................... 13, 37

Weems v. U.S. (1910) 217 US 349, 54 L.Ed. 793, 30 S.Ct. 544 ............... 48, 50

Bank of Nova Scotia v. United States, 487 U.S. 250, 108 S.Ct. 2369
101 L.Ed. 2d 228 (1988)......54

Walberg v. Israel, 766 F.2d 1071, 1078 (7th Cir.) (Posner J.), cert.
denied, 474 U.S. 1031 (1985)..........54

Wiggins, 539 U.S. at 520-21................................................ 35

Williams v. Griswald, 743 F.2d 1533, 1541 (11th Cir. 1984)................ 38, 46

Williams v. Taylor, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000).   8, 35

Young v. Dretke, 356 F.3d 616, 623 (5th Cir. 2004)............................ 8

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. V

U.S. Const. Amend. VIII

U.S. Const. Amend. IX

U.S. Const. Amend. XIV

## STATUTES AND RULES

18 U.S.C. § 1651............................................... 1

18 U.S.C. § 371 (1982)....................................... 21

18 U.S.C. § 373(a)........................................... 21, 22

18 U.S.C. § 1621............................................. 21

18 U.S.C. § 1622............................................. 21

18 U.S.C. § 3595 (c)(2)(a)................................... 13

U.S. Const., Art. III, § 1 ................................. 19

Private Securities Litigation Reform Act of 1995 (PSLRA), 109 Stat.
737, 15 U.S.C.S. 78u-(4)(b)(1),(2)...... 18

RULE 20................................................... 1

## OTHER

Garrett & Neufeld, Invalid Forensic Science Testimony and Wrongful
Convictions, 95 Va. L. Rev. 1, 14 (2009))............................. 8

www.innocenceproject.org/content/Cameron__Todd__Willingham__Posthumous__
Pardon__Filing__Documents.php.............................. 43, 53

www.law.northwestern.edu/wrongfulconvictions/How Snitch testimony sent
Randy Steidl and other innocent Americans to Death Row................48

## PETITION FOR " EXTRAORDINARY WRIT "

Sherman Lamont Fields ("Petitioner" or "Fields") respectfully petitions for an extraordinary writ to review a fundamental miscarriage of Justice, the Constitutionality of the Antiterrorism and Effective Death Penalty Act, the Constitutionality of the Death Penalty; Also a potential error made by the [Supreme Court].

## OPINIONS

The July 30, 2014 decision of the Court of appeals, as revised on September 2, 2014 is reported at 761 F.3d 443(5th Cir. 2014). On September 30, 2014, the Court of appeals denied Petitioner's motion for an en banc rehearing. The § 2255 decision of the United States District Court for the Western District of Texas (the "District Court") was issued on September 25, 2012. On June 10, 2013, the District Court denied Petitioner's motion for reconsideration.

## JURISDICTION

The Supreme Court denied cert on June 4, 2015, The Court of appeals decision was entered on July 30, 2014, and en banc rehearing was denied on September 30, 2014. Petitioner invokes this Court's Jurisdiction pursuant to 28 U.S.C. § 1651 and the ALL WRITS ACT & RULE 20.

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED '

The Fifth Amendment to the United States Constitution (U.S. Const. Amend. V) provides:

No person shall be held to answer for a capital, or other infamous crime, nor be deprived of life, liberty, or property without due process.

The Eighth Amendment to the United States Constitution (U.S. Const. Amend. VIII) provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

The Ninth Amendment to the United States Constitution (U.S. Const. Amend. IX) provides: The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

The Fourteenth Amendment to the United States Constitution (U.S. Const. Amend. XIV) provides:

No State shall...deprive any person of Life, Liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws; No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.

28 U.S.C. § 1651 provides:

(a). The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

X

(b). An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

RULE 20 provides:

Issuance by the Court of an extraordinary writ authorized by 28 U.S.C. § 1651(a) is not a matter of right, but of discretion sparingly exercised. To justify the granting of any such writ, the petition must show that the writ will be in aid of the Court's appellate jurisdiction, that exceptional circumstances warrant the exercise of the Court's discretionary powers, and that adequate relief cannot be obtained in any other form or from any other court. See Morales v. Bezy, 499 F.3d 668 (7th Cir. 2007).

STATEMENT OF THE CASE

In January 2004, Petitioner Sherman Lamont Fields was convicted of escape, murder, conspiracy, felon in possession of a firearm, carjacking, and carrying a firearm in the commission of crime(s) of violence; (i.e.) escape & carjacking. Fields, whom states that he's innocent was subsequently convicted and sentenced to death in the U.S. District Court for the Western District of Texas.

Fields petitioned the district Court to amend his habeas petition as soon as Fields received a copy of the § 2255 that his counsel had filed in his behalf; Fields wanted to include several issues that were left out. However the District Court didn't respond.

The District Court subsequently denied habeas and Fields petitioned the 5th Circuit to allow him to proceed pro se, or in the alternative let him file a brief along with whatever appointed counsel filed. Fields filed a brief and 3-Volumes of appendix in support of his issues.

The 5th Circuit rejected the brief "because Fields had attorney's".

Fields proposed "relieving counsel of their duty" so his pro se brief could be heard, but the 5th Circuit still refused "because Fields had attorney's".

Counsel for Fields filed their brief on Fields' behalf in the 5th Circuit and as soon as Fields got a copy of it he immediately notified the 5th Circuit that he "strenuously object" to the brief and asked the 5th Circuit to reconsider his pro se brief. However the 5th Circuit refused again and issued an Order not to accept anything that Fields file.

Fields then filed two motion(s) with the Supreme Court appealing the 5th Circuit's Order, and the Supreme Court informed Fields that he would have to file in the lower court first.

The 5th Circuit then denied the brief that Counself for Fields filed alleging that Fields didn't assert issues that Fields clearly did assert off in the pro se brief that the 5th Circuit refused to consider.

Fields now seeks review from this Court with respect to the Supreme Court telling him that he would have to "file in the lower court first" when in fact Fields was

1

petitioning the Supreme Court to review the 5th Circuit(s) Order. Fields also seeks review from this Court with respect to several issues that violate his Constitutional Rights and would have guaranteed him relief had the 5th Circuit not erroneously rejected his pro se brief. Fields also seeks review from this Court with respect to the Constitutionality of the Antiterrorism and Effective Death Penalty Act and the Death Penalty.

THIS COURT SHOULD GRANT THIS " EXTRAORDINARY WRIT " BECAUSE FIELDS WAS ALREADY APPEALING AN ORDER FROM THE 5th CIRCUIT COURT OF APPEALS WHEN THE SUPREME COURT MISTAKENLY INFORMED FIELDS THAT HE WOULD HAVE TO FILE IN A LOWER COURT; AND THE MISTAKE PROVED TO BE FATAL FOR FIELDS:

As soon as Petitioner received a copy of the Habeas petition that was filed on his behalf in the District Court, Fields recognized that several issues that he wanted filed were missing, to include, but not limited to ' Fraud On The Court '; Fields immediately notified the Court that the petition was incomplete. (See App. 1).

When the District Court denied habeas Fields informed the Court that from that point forward he would be proceeding pro se; The Court denied Fields' request to proceed pro se. ( See App. 2 ).

Fields then notified the 5th Circuit that he would be proceeding pro se. (See App. 3).

The 5th Circuit sent a copy of the Motion to Fields' attorney, Jeff Ellis and a copy to the prosecution, then returned the original to Fields for his signature. ( See App. 4. ).

This request for the signature misled Fields to believe that the Motion was accepted and Fields immediately filed a Freestanding Actual Innocence Brief with 3-volumes of Appendix showing that not only could he prove that he was Actually and Factually innocent, but he could also prove that his conviction and death sentence were the direct result of a Fraud On The Court with a criminal conspiracy being its foundation, and the admission of false facts precluded the development of true facts. ( See App. 5 ).
Fields also filed a Motion to Seal the brief. ( See App. 6 ). A Motion to Bar the prosecution and their coconspirators from having any contact with each other due to their ability to continue their criminal endeavors. ( See App. 7 ); And A Motion for Discovery. ( See App. 8 ).

Fields' attorney, Jeff Ellis responded to the Court stating that Fields' pro se Motion isn't actually a " Pro Se " Motion and Fields only ask to be able to file his brief and Motion(s) along with additional pleadings filed by counsel. ( See App. 9).

3

On 10/23/13 the 5th Circuit denied Fields' Motion to proceed pro se. (See App.10).

On 10/30/13 the 5th Circuit notified Fields that they won't consider his brief and Motions. ( See App. 11 ).

Fields responded to the notice and asked the Court to allow his brief and Motions to either work in conjunction with whatever counsel intended to file, or allow his "filings" to stand alone, but on 11/18/13 the 5th Circuit refused again. ( See App. 12 ).

Fields responded to the notice once again stating that he don't want to rely on the unseen brief that counsel intended to file and asked the Court to reconsider, but on 12/5/13 the 5th Circuit responded stating that only Fields attorney's can file on his behalf. ( See App. 13 ).

On 12/12/13 Fields received a copy of the brief that Counsel filed on his behalf, Fields immediately filed a Motion for Reconsideration of his Pro Se filings, stating that he "strenuously object" to the brief that counsel filed. ( See App. 14 ).

On 12/24/13 Fields filed another Motion to "Reurge filings". ( See App. 15 ).

On January 14, 2014 the 5th Circuit entered an Order to not accept " anything " that Fields file. ( See App. 16 ).

Fields filed two Motions to the        ( Supreme Court ) appealing the Order. ( See App. 17 ).

Fields then filed a Motion pursuant to Rule 60 in this Court postmarked Feb. 17, 2014. ( See App. 18 ).

On 5/6/14 Fields received the Rule 60 Motion back from the Supreme Court with a 60 day deadline from May 1st, 2014  to restructure the Motion with a timeline of events, and serve a copy on opposing counsel, Fields met those criteria and refiled by June 9, 2014. ( See App. 19 ).

In late June 2014 Fields received the petition back from the Supreme Court with a note that said that Fields would have to wait until the 5th Circuit ruled on his COA before he could file in the Supreme Court. ( See App. 20 ).

4

Fields immediately responded. ( See App. 21 )

On 8/15/2014 the Supreme Court informed Fields that he would have to file in the " lower Courts ".

In 8/4/ 2014 the 5th Circuit denied COA alleging that Actual Innocence isnt't cognizable in their Circuit and alleging that I didn't assert issues that I clearly did assert in the Brief and Motions that they refused to let me file pro se. ( See App. 22 ).

On June 4, 2015 the Supreme Court denied Cert. in Sherman Lamont Fields v. United States of America, No. 14-772 in regards to issues unrelated to Fields' pro se filings.

## ARGUMENT

Fields believe
refused to entertain his brief and Motion(s), he appealed that decision to Court and the Supreme Court instructed him to " file in the lower Courts ", when in fact there was no " lower Court " with jurisdiction to appeal the order of a Circuit Court, only the Supreme Court had jurisdiction.

The 5th Circuit erroneously rejected Fields' petition, and at the very least it should have been liberally construed as a motion to amend; United States v. Sellner, 2014 BL 350656, 8th Cir., No. 13-3794, 12/15/14. The 5th Circuit rejected Fields' pro se filings because Fields was represented by counsel, but even when Fields said that he would " relieve counsel of their duty " and/or keep them in order to keep the process on track, just as long as he was able to have his pro se filings entertained the 5th Circuit still refused to consider Fields' petition. In Price v. Johnson, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed 1356 (1948), the Court held that " a prisoner has no absolute right to argue his own appeal or even to be present at the proceedings in an appellate Court " foreclosed any right of a pro se defendant to act pro se. But this did not foreclose the right of a defendant to present a pro se brief. In light of this the Court argued that, whether at trial or on appeal, a defendant should not be required to have counsel forced upon him or her. In Chamberlain v. Ericksen, 744 F.2d 628, 630 (8th Cir. 1984), cert. denied, 470 U.S. 1008, 84 L.Ed. 2d 387,

105 S.Ct. 1368 (1985), the Chamberlain Court, quoting the above styled language from Price v. Johnson, found that a criminal defendant does have a right under the Constitution to present pro se briefs or motions on appeal. Fields believes that the Supreme Court's refusal to entertain his Motion(s) and instruct the 5th Circuit to consider his pro se petition proved to be fatal to Fields; The Supreme Court(s) instruction that Fields had to file in a "lower Court" had to be a "mistake" since he(Fields)was already appealing the decision of a "lower Court" not to accept his pro se filings, and the Supreme Court had jurisdiction to hear it.

THIS COURT SHOULD GRANT THIS " EXTRAORDINARY WRIT " BECAUSE THE 5th CIRCUIT'S REFUSAL TO ACCEPT FIELDS' PRO SE FILINGS LED TO THE VIOLATION OF GREGG v. GEORGIA, 428 U.S. 153, 49 L.Ed. 2d 859, 96 S.Ct. 2909 (1976) AND ITS PROGENCY, AND UNDOUBTEDLY PROVES THAT THE SAFEGUARDS PUT IN PLACE IN GREGG TO PROTECT THE INNOCENT FAILED TO PROTECT FIELDS FROM THE COURT'S UNREASONABLE DETERMINATION OF THE FACT(S) AND THE LAW.

In denial of Fields' COA the 5th Circuit stated " Moreover, Fields does not acknowledge that at trial, there was testimony that the Grand Am " looked like it had been detailed [and] wiped down." ( See App. 22, pg. 54 Of 62 )

However, Fields did indeed acknowledge that the detective said that the car "looked detailed" or "wiped down" off in the Pro Se brief that the 5th Circuit rejected; ( See Pro Se Brief, App. 5, pg.18, and Motion for Discovery, App. 8 ). In the brief and Motion Fields also show how and why the Detective's lie that the car "looked detailed" or "wiped down" is indeed a blatant lie.

In denial of Fields' COA the 5th Circuit also stated that the car " had suspicious stains that could possibly be blood." ( App. 22, pg. 54 of 62 )

Fields also acknowledged this in the brief and Motion(s) that the 5th Circuit rejected.

On the night of November 6, 2001 when Suncerey "Shining Star" Coleman was murdered Fields was driving a red two door Pontiac Grand Am; That Grand Am was subjected to forensics testing and cleared.

The two people that Fields said really committed the murder, Shalaykea "Lakie" Scroggins, and Edward Lee "Treyboy" Outley was in a GOLD Jaguar, but they both conspired to hide the Jaguar so the car wouldn't be subjected to forensics testing; Outley lied and said that the Jaguar was BLUE; (See App. 23 ). Scroggins also lied and said that the Jaguar was BLUE; (See App. 24 ).

The prosecution knew they were lying because a few months before trial the prosecution

found the owner of the Jaguar and he told them that on the night of the murder all he had was a GOLD Jaguar and it was that GOLD Jaguar that he rented to Outley for some crack cocaine. (See App. 25). Instead of the prosecution admitting that Scroggins and Outley had "pulled the wool" over their eyes, the prosecution willfully, deliberately, intentionally and knowingly chose to defraud the Court; The prosecution told the jury that Outley and Scroggins was indeed in a BLUE Jaguar that the prosecution already knew didn't exist. (See App. 26). And continuing on their quest to frame Fields for the murder the prosecution procured a sheriff detective with no forensics credentials to lie and say that the reason they didn't find either Fields blood or the victim's blood in the Grand Am is because the vehicle "looked detailed" or "wiped down". ( See App. 27).

That was a blatant lie, the forensics report show that the car wasn't "detailed" or "wiped down" . ( See App. 28 ). There are also forensic photo's that the prosecution didn't turn over to the defense (same report), and those photo's will undoubtedly show that the car wasn't "detailed" or "wiped down".
In addition to that the real forensics expert acknowledged that even if a vehicle is "detailed" or "wiped down" forensics have technology that would still find blood. (See App. 29).

## ARGUMENT

" A factual determination made by a state court must be rebutted by clear and convincing evidence." quoting Clark v. Quarterman, 457 F.3d 441, 443 (5th Cir. 2006)) (internal quotation marks omitted). The question of whether the Grand Am was "detailed" or "wiped down" involves issues of fact, that the forensics report undoubtedly rebuts by clear and convincing evidence. ( Maldonado v. Thaler, 625 F.3d 229, 236 (5th Cir.2010)) (internal quotation marks omitted). Dirt, fingerprints, bags of debris, a "stain" isn't conducive to a vehicle that was "detailed" or "wiped down". " A Court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or make findings of fact that are clearly erroneous." Chicago Tribune Co. v. Bridgestone/Firestone Inc., 263 F.3d 1304, 1309 (11th Cir. 2001). The 5th Circuit stating that there was a "stain" that could possibly be blood is a finding of fact that is clearly erroneous; the "stain" was tested with TMB solution and it was not blood. ( See forensics report App. 28 ), but the forensics expert took the carpet anyway and sent it for further testing, and those tests also proved negative. ( See App. 30 ). " A state court's decision is contrary to Supreme Court precedent if: (1) the court

arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law; or (2) the Court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." Pippin v. Dretke, 434 F.3d 782, 787 (5th Cir. 2005) (alterations in original) (quoting Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed. 2d 48 (2006). " A Court's decision is an unreasonable application of clearly established federal law whenever the Court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an objectively unreasonable manner." Id. ( quoting Young v. Dretke, 356 F.3d 616 623 (5th Cir. 2004). " An unreasonable application may also occur if the Court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply." Id. at 787-88 (alteration in original ) (quoting Young, 356 F.3d at 623). In evaluating the evidence presented in the Court, the Supreme Court presume that the lower court's factual findings correct unless a petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C.S 2254(e)(1). The 5th Circuit accepting Detective Colyer's lie that the Grand Am "looked detailed" or "wiped down" and that there was a "stain" that could possibly be blood is "findings of fact" that the forensics report "clearly rebut[s]. And the Court[s] acknowledgment of the "stain" renders the detective's testimony that the car "looked detailed" or "wiped down" clearly false. How is it that the car "looked detailed" or "wiped down" when in fact there was a "stain" that was prominent enough, or sufficient enough to be tested? In 188 L.Ed. 2d 1,__U.S.__Hinton v. Alabama, the Court found that " Prosecution experts, of course, can sometimes make mistakes. Indeed, we have recognized the threat to fair criminal trials posed by the potential for incompetent or fraudulent prosecution forensics experts, noting that "[s]erious deficiencies have been found in the forensic evidence used in criminal trials...One study of cases in which exonerating evidence resulted in the overturning of criminal convictions concluded that invalid forensic testimony contributed to the convictions in 60% of the cases." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 319, 129 S.Ct. 2527; 174 L.Ed. 2d 314 (2009) (citing Garrett & Neufeld, Invalid Forensic Science Testimony and Wrongful Convictions, 95 Va. L. Rev. 1, 14 (2009)). This threat is minimized when the defense retains a competent expert to counter the testimony of the prosecution's expert witnesses; it is maximized when the defense instead fails to understand the resources available to it by law." In Fields case detective Colyer was no expert and his testimony in regards to the forensics was fraudulent and the prosecution knew that. Instead of the prosecution calling their real forensics expert to the stand they procured Detective Colyer to lie, Fields, himself called the governments real forensics expert to the stand and he didn't say that the car "looked detailed" or "wiped down", instead he processed the car and found and recovered evidence that's

not indicative of a "detailed" or "wiped down" vehicle; evidence that exonerates Fields. In this case the 5th Circuit clearly got it wrong; the 5th Circuit's refusal to consider Fields pro se brief and Motions restricted the Court from adjudicating his claims on the merits because it " unreasonably truncated further factual development " on Fields' claim of Actual Innocence.

THIS COURT SHOULD GRANT THIS " EXTRAORDINARY WRIT " BECAUSE MINUS THE CONSTITUTIONAL VIOLATION(S) FIELDS IS ACTUALLY INNOCENT.

The prosecution contends that " there is no requirement that [Fields] be linked to the murder through a positive DNA test:" (See App. 22, pgs 53 Of 62 & 54 of 62 ). The lower Courts agree. However had it not been for the criminal act(s) committed by the prosecution Fields would have been exonerated; The Court should not undermine the significance of the other forensics. The fact that there was no blood found in the Grand Am can't be ignored for several reasons. (1) It was significant enough that the prosecution resorted to committing criminal act(s) in order to conceal the fact that Outley and Scroggins conspired to hide the car that they were in when Coleman was murdered; (2) It was significant enough that the prosecution resorted to committing criminal act(s) by procuring Sheriff Detective Morris "Bubba" Colyer to lie and say that there was no blood in the Grand Am because the car "looked detailed" or "wiped down"; (3) It was significant enough that the prosecution resorted to committing criminal act(s) in order to withhold the pre and post forensic photo's that will undoubtedly show that the car didn't "look detailed" or "wiped down". And (4) (which is most important): The forensics in regards to the car have dominated the entire process throughout the criminal proceedings. At trial during deliberations in guilt/innocence the jury only had one question, they requested to see the forensics from the car. (See App. 31). The Judge denied the request. ( See App. 32 ). That's when the jury returned the guilty verdict. Had the Judge not denied their request, and the jury would have saw the forensics results showing that there was no blood Fields would have been exonerated; Had the prosecution not procured detective Colyer to lie and say that the car "looked detailed" or "wiped down" Fields would have been exonerated; And If the prosecution would have honored their duty to disclose and turned over the forensics photos Fields would have been able to impeach Detective Colyer's false testimony and the pictures would have been in evidence for the jury to refer to and Fields likewise would have been exonerated. The Judge's instruction(s) for them to remember the testimony was insufficient because had they remembered the testimony they wouldn't have been requesting it.

9

And as you can see in (App 22) the forensics in regards to the car dominated the appeals process as well.

### ARGUMENT

The forensics report showing that the car was not "detailed" or "wiped down" and that the stain was tested and it wasn't blood rebuts the Court(s) factual determination with clear and convincing evidence. And the fact that the jury's sole question in regards to Guilt/innocence was in regards to those forensics undoubtedly proves that Fields is innocent.

There should be no doubt that Fields have established a "colorable showing of innocence "; Kuhlman v. Wilson, 477 U.S. at 454 & n.17, 106 S.Ct. at 2627 & n.17; Schlup v. Delo, 513 U.S. 298, 314-16, 130 L.Ed. 2d 808, 115 S.Ct. 851 (1995). The Due Process Clause have been severely and egregiously offended by the prosecution's actions here. " Due Process of law prohibits the conviction of either a legally and/or factually innocent person." Gardens v. Stephens, Sup. Ct. #13-546 (2013) cert. pending, (5th Cir. 8/2/13). The evidence that the jury was permitted to hear was impermissible, materially inaccurate, and demonstrably false. Duest v. Singletary, 967 F.2d 472, 482 (11th Cir. 1992), vacated on other grounds, 507 U.S. 113 S.Ct. 1940, 123 L.Ed. 2d 647 (1993). In re davis, No. CV 409-130 (8/24/10), the Court held that " the lowest degree of confidence in a jury verdict would presumably occur when the jury has heard a corrupted body of evidence." Because the procedural protections in place to protect the innocent from conviction have been breached, confidence in the result of the trial is generally undermined." The evidence in this petition proves undoubtedly that the prosecution improperly suppressed evidence and used perjury to undermine the forensics that would have exonerated Fields. Mooney v. Holohan, 294 U.S. 103, 113 (1935). Thus Fields is Actually Innocent.

THIS COURT SHOULD GRANT THIS " EXTRAORDINARY WRIT " BECAUSE THE SAFEGUARDS PUT IN PLACE IN GREGG v. GEORGIA AND ITS PROGENCY FAILED TO PROTECT FIELDS FROM A CONVICTION AND DEATH SENTENCE INFLUENCED BY PASSION, PREJUDICE AND OTHER ARBITRARY FACTORS.

There was no evidence linking Fields to the murder as one would expect in a case where the defendant is innocent. But the prosecution was so mad that Fields walked out of that jail they were determined to "make an example" out of Fields by any and all means necessary. The prosecution went "seeking jailhouse testimony". ( See App. 33 ) and built a case strictly off jailhouse testimony; most of the inmates Fields had never even seen before until they got up on the witness stand

and lied.

The prosecution undoubtedly knew that the inmates were lying, Fields was a segregated inmate, in a one man cell all alone, the officer(s) desk was right outside his cell door in the hallway so they could hear any and everything that he said, and there was an observation sheet on Fields' door that the officer(s) had to sign and record everything that he said and/or did every fifteen minutes. And all of the inmates that the prosecution hired to lie on Fields were either corresponding with Outley and/or Scroggins before they "came forward", or the inmates was in their presence, or in the presence of someone that Scroggins and/or Outley were corresponding with.

One inmate, Homero DeLeon, he claimed that he was in the cell across the hall from Fields and Fields hollared across the hall and said, " I'm going to confess to you since you're not on the governments witness list to testify." DeLeon said that Fields confessed to him because he'd been Fields' cell mate in the past. No other inmate in the surrounding cells heard the alleged confession; None of the officer's at the desk heard this alleged confession, but most importantly jail records will show that DeLeon have NEVER been Fields' cell mate, Fields had never even seen DeLeon before until he got up on the witness stand and lied.

In any event the prosecution claim that DeLeon and other inmate testimony is "overwhelming evidence" of Fields guilt.

However, the jury disagreed:

DeLeon and all of the other inmates testimony was geared towards premeditation, and in closing the prosecution summed up that testimony and vigorously argued premeditation, stating " this is premeditation ", " that is premeditation " imploring the jury to find so. But the jury found that it was not premeditated. ( See App. 34 ). Thus the jury did not believe the inmates, and for good reason. There could be no other reason for Fields' conviction other than the fact that it was influenced by passion, prejudice and other arbitrary factors.

## ARGUMENT

The Georgia Statute, as amended following Furman v. Georgia, 408 U.S. 238, 33 L.ED .2d 346, 92 S.Ct. 2726, held that " the Court must consider whether the sentence was influenced by passion, prejudice, or any other arbitrary factor." The prosecution lying and saying that the car "looked detailed" undoubtedly influenced the jury because at guilt/innocence the sole jury question in regards

to the evidence was a request to see the forensics from that car; This arbitrary factor without question influenced the verdict, because right after the judge denied their request to see the forensics they returned the guilty verdict. Also the Judge informed the jury that the indictment meant that it is " more likely than not ," that Fields committed the crime; United States v. Sherman Fields, 483 F.3d 313 (5th Cir. 2007). The Judge told one juror that if the prosecutors thought Fields' rights were being violated they would dismiss the charges. ( See App. 35 ). This was extremely prejudicial being that the prosecution went "seeking jailhouse testimony", fabricated evidence against Fields, withheld exculpatory and impeachment evidence, committed criminal act(s) in order to help Outley and Scroggins hide the Jaguar, and defrauded the Court(s); These arbitrary factor(s) undoubtedly influenced the verdict. Also the prosecution flooded the jury with numerous very graphic crime scene and autopsy pictures. The 5th Circuit even admits " Many of the photo's are, as the defendant posits, shocking." United States v. Fields (5th Cir. 2007); Supra.

Also the jury put a lot of trust in police officer's, stating ( in their jury questionnaires ) that " police officer's must be obeyed at all times." Thus it appears that while discounting the inmate testimony the jury took the police lies at face value. For instance: A Tammy Edwards claimed that her car was jacked by "an unknown black male". Then two years later she attempted to sue Civigenics, the jail that Fields walked out of. Mrs. Edwards then changed her story, she said that she immediately recognized that it was Fields. Then she said: " Oh, he shot at me too."

Fields denied carjacking Mrs. Edwards. She claimed that this car jacking took place at a major hospital, at shift change in an open parking lot, there was a struggle, yelling and screaming, and a gun shot, yet no one heard or saw anything; That's impossible.
The investigation revealed that Tammy Edwards, a white female, is married to and have a child with a black male named Darrel Edwards, Mr. Edwards robbed an elderly couple and murdered the woman, he pled guilty to a Life sentence in order to avoid the death penalty. It appears that Mrs. Edward took advantage of Fields' unfortunate situation and falsely accused him of jacking her car so she and her husband could scam Civigenics.

At trial the prosecutor led a Detective Steve January into perjury claiming that " there were no fingerprints, this thing was clean." ( See App. 36 ) ( This is the exact same argument that they used in regards to the Grand Am to defraud the Court." However, there are indeed fingerprints in the alleged carjacking vehicle. ( See App. 37 ). These prints were checked against Fields' prints and there was no match. ( See App. 38 ). The jury never knew that there were indeed fingerprints, nor did they know that the prints don't match Fields, thus the jury undoubtedly took Detective January's lie at face value and this arbitrary factor contributed to Fields' conviction.

12

" It has been held that knowingly false or misleading testimony by law enforcement officer(s) is imputed to the prosecution "; Wedra v. Thomas, 671 F.2d 713, 717 n.1 (2d 1982); Curran v. Delaware, 259 F.2d 707, 712-713 (3rd Cir. 1958)(citing Pyle v. Kansas, 317 U.S. 213, 87 L.Ed 214, 63 S.Ct. 177 (1942). " The knowing use of perjured testimony constitutes a Due Process violation as defined in Kyles v. Whitley, 514 U.S. 419, 435, 131 L.Ed. 2d 490, 115 S.Ct. 1555(1995). law Enforcement's blatant lies undoubtedly influenced the verdict, but there are still more arbitrary factor(s), such as (1) The jurors belief that " Black males commit most violent crimes "; (2) The fact that " a group of "blacks" jumped on one jurors daughter and son-in-law; (3) Another juror said that her preachers father was murdered and the man that killed him didn't do not one day in jail; ( thus it's only logical to believe that she didn't want someone else to " get away with murder " like the man that killed her preacher(s) father.) And there are a host of other arbitrary factor(s) that Fields can and will name if given the opportunity. The above proves that there is an unacceptable risk that the jury undoubtedly imposed Fields' death sentence under the influence of passion, prejudice and/or other arbitrary factor(s). 18 U.S.C.S. 3595(c)(2)(a).

THIS COURT SHOULD GRANT THIS " EXTRAORDINARY WRIT " BECAUSE THE SAFEGUARDS PUT IN PLACE IN GREGG v. GEORGIA AND ITS PROGENCY FAILED TO PROTECT FIELDS FROM FRAUD ON THE COURT(S).

(a) When Fields was fifteen years old he met and started dating eighteen year old April Vasquez. At the time Vasquez had a boyfriend named Derrick Bradshaw whom was also eighteen, Bradshaw couldn't accept the fact that he'd lost Vasquez to Fields and one night as Fields and Vasquez walked home from the store Bradshaw pulled up in his car, stood up in the sunroof, and started shooting at Fields. A bullet struck Vasquez in the leg.

Fields didn't respond to Bradshaw's aggression, he let the police "handle it", but shortly thereafter Bradshaw pulled a gun on Fields again, this time Fields obtained a gun himself, went by Bradshaw's house and shot back. Bradshaw's stepfather was most likely struck by the flying glass, his injury didn't require

hospitalization, he was treated on the scene and released. " I wasn't trying to hurt him or anyone else, I was just trying to scare Bradshaw into leaving me alone." Fields said.

In any event, when Fields turned eighteen years old he accepted responsibility for the incident, pled guilty to aggravated assault, and twelve days after his eighteenth birthday he was sent off to State prison for eight years.

Fields got out of prison exactly eight years later, and shortly thereafter in September 2000 he got into an altercation with a guy that was disrespecting a young lady that have a child with Fields' cousin; The guy went and hired a Hit Man named LaDon King to murder Fields, and when Fields and LaDon King crossed paths that first time King almost killed Fields. Fields tried to run, but he fell, fortunately for Fields some security guards at the apartment complex saw what was happening and thwarted King's efforts. LaDon King came back the next day and Fields ended up shooting King.

A couple of weeks later the police surrounded a house where Fields was at, they ordered the homeowner out of the house, rushed in and found Fields hiding in a closet. After Fields was handcuffed the police searched him and found 28-nine millimeter bullets in his pocket. One of the officer's yelled, " There's a gun somewhere!" They didn't have a search warrant, they didn't have the homeowners permission to search the house, but they searched anyway and found a Nine-millimeter handgun up under a mattress. They didn't charge Fields with the gun, they charged him with Attempted Murder for shooting the Hit Man, and Fields made bail.

A few months later a guy named Royce Riley and another guy went to Killeen Texas to buy some crack cocaine from Riley's brother-in-law. The drugs was "short" so Riley refused to buy the drugs. The brother-in-law, a guy named "Ike" and Ike's friend, "Soldier boy" became Irate and an argument ensued between Riley and the two drug dealers. When the car that the four men were in came to a stop at a stop sign the guy with Riley asked Ike to " let me see the dope again." Ike handed him the drugs and the guy jumped out of the car and ran away with the cocaine.

Ike was angry and he and Soldier Boy attempted to kidnap Riley. Riley pulled out a gun, fired a shot into the console and jumped out of the car and ran too.

Ike and Soldier Boy drove to Ike's sister house, where Ike told her that Riley and "some other guy" ran off with their drugs. The girl said, " It had to be Sherman Fields." So Ike called the police and told them that Riley and "Sherman Fields" robbed him and Soldier Boy for jewelry and money.

Fields was arrested again, but ten months later when the State realized that they wouldn't be able to prosecute Fields, they asked the Federal Government to prosecute Fields for the Nine-millimeter that they found under the mattress a year prior when Fields was arrested for shooting the Hit Man.

The government charged Fields with being a Felon in possession of a firearm; Felon in possession of a firearm with an obliterated serial number; And, Possession of Ammunition. Fields was then transferred from State Custody into Federal Custody.

Fields attorney went to the prosecution with a necessity defense, but the government said that Fields should have "just called the police". The governments "logic" was totally illogical, the Hit Man, LaDon King was already Wanted for kicking another guys door in, shooting him eight times with a .40 caliber and leaving him for dead, amongst a host of other very violent incidents when he went after Fields and the police had failed to apprehend him. And then after LaDon King was shot he escaped from the hospital, pulled a gun on a police officer and got away again; The police couldn't even handle that man.

In any event Fields made the worst mistake of his life, he offered a jailor $5,000 for a key to the fire escape door, and he used that key to open the door, and he walked away from the jail. That same night Suncerey Coleman was shot and killed.

In both incidents where Fields discharged a firearm the government have repeatedly omitted the fact that Fields wasn't the aggressor, he "reacted" only after, in both cases the guys tried to murder him "twice".
( Quoting the prosecution verbatim in their brief in opposition of Writ of Certiorari):

" The government introduced testimony concerning petitioner's prior involvement with violent crime. A Waco, Texas police detective testified that in 1992, petitioner pleaded guilty to attempted murder with a deadly weapon after shooting a man in the head during a drive-by shooting. 15 Trial Tr. 2149-2150. Following his release from an eight year prison sentence for the crime, petitioner took part in another shooting. Id at 2176-2177. When petitioner was ultimately arrested for this second shooting he was in possession of a firearm. Ibid."

(b). When Fields was a child, 13, 14 years old, all of his friends were getting murdered. Fields didn't know how to deal with it and it triggered deep seeded mental and emotional issues; He was placed on strong antidepressants and placed on Social Security disability.

When Fields went to prison in 1992 he married April Vasquez in jail by proxy, Vasquez continued to get Fields' SSI benefits. This was unbeknownst to Fields, and he had someone call the Social Security company and tell them that he was incarcerated. This led to the discovery that Vasquez was getting the checks, she was arrested and the checks were discontinued.

Vasquez blamed Fields, she thought he intentionally had her arrested and placed on probation. At trial in 2004, the government recruited Vasquez as a "witness" against

15

Fields.

(Quoting the government verbatim in their brief in opposition of Writ of Certiorari):

" The government also presented testimony from petitioner's ex-wife, April Fields (Vasquez), the mother of three of petitioner's children. 15 Trial Tr. 2201-2202. Fields (Vasquez) testifief that petitioner frequently raped her, beat her, and threatened to kill her. Id at 2203-2205."

The government conveniently left out that Vasquez claimed that when Fields would "beat", "rape" and/or "threaten to kill her" she would call the police, and Fields Family would say that Fields didn't do nothing to her and the police would "just leave".

(c). The government committed Fraud On The Court when they said that there were no fingerprints and continued this false narrative throughout the appeals process.

The omission of the fact that the alleged "stain" was tested twice, and it wasn't blood, constitutes fraud.

The withholding of the pre and post forensics photographs in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), constitutes Fraud.

(D). When the prosecution presented the case to the Grand Jury, in order to Frame Fields for Coleman's murder the prosecutor, Greg Gloff procured a Detective Johnny Spillman to lie and say that when Fields came into contact with the victim he became "Irate". ( See App. 39 ). And in order to bolster Detective Spillman's false testimony the prosecution procured U.S. Marshal Chris Casson to lie and say that the victim's cousin, Tanesha Hilliard ( whom was with the victim on the night of the murder ), said that Fields became "angry" when he came into contact with the victim. ( See App. 40 )

That was a blatant lie, Tanesha Hilliard had already said that Fields wasn't "angry". ( See App. 41 ). Then at trial she reiterated the fact that Fields was never mad. ( See App. 42 ).

The prosecution intentionally, knowingly, deliberately, with malice aforethought defrauded the Grand Jury into indicting Fields.

(E). The prosecution telling the jury that Outley and Scroggins was indeed in a BLUE Jaguar while knowing all along that the Jaguar was GOLD constitutes fraud.

(f). The prosecution procuring Detective Colyer, a guy that wasn't even a forensics expert to lie and say that there was no blood found in the Grand Am because the car "looked detailed" or "wiped down" and continuing that false narrative throughout

the appeals process, while knowing that their real forensics expert processed the vehicle and found things that isn't indicative of a "detailed" or "wiped down" vehicle: (i.e.) fingerprints, dirt, fibers, a "stain"; And the expert also said that they have technology that would still find blood. The prosecution(s) actions constitute fraud.

(g). Shalaykea "Lakie" Scroggins claimed that she never threatened the victim. ( See App. 43 ). And all throughout the appeals process the prosecution have presented this false narrative to the Courts while knowing that it isn't true. ( See App. 44 ). Four months prior to Coleman's murder Scroggins wrote two letters expounding upon her obsession for Fields. She wrote about how she'd lost Fields to Coleman once and vowed, "I will not let it happen again." And if she were to lose Fields again, she would be "killing bitches". ( See App. 45 ).

Then a week before the murder Scroggins approached the victim and they got into a very heated argument. ( See App. 46 ). The only reason it didn't turm physical is because Fields mother arrived and broke it up.

Scroggins then went and got a phone turned on in Fields name and she immediately started calling the victim, threatening her. The day before the murder Fields and the victim called the phone company together and Coleman (the victim) told them that Scroggins illegally got the phone turned on in Fields name and she was calling her house threatening her. ( See App. 47 ).

(h). Scroggins claimed that Fields called her at eight o'clock P.M. on November 15, 2001 and told her very graphic details of the murder. Fields got the phone records and proved that there was no such call. The prosecution then defrauded the Court, telling the jury that the reason the phone records don't show the call is because phone records only show calls to cell phones. ( See App. 48 ). That was a blatant lie, the prosecution had just introduced phone records to show Fields' calls to the victim from jail, from one land line to another land line.

(i). The prosecution hiring inmates to lie, and that they knew were lying, and holding throughout the appeals process that these inmates false testimony is "overwhelming evidence" of Fields' guilt constitutes fraud.


## ARGUMENT


" Perjury committed in the course of legal proceedings is a <u>fraud on the Court</u>." See e.g., Allen v. Chicago Transit Auth., <u>317 F.3d 696</u>, 703 (7th Cir. 2003); Thomas v. Gen. Motors Acceptance Corp., <u>288 F.3d 305</u>, 306-07 (7th Cir. 2000). The Fraud On The Court "trickled up" from the District Court, to the 5th Circuit, on up to the Supreme Court on cert. In order for the prosecution to prevail they had to continue

17

the false narrative(s) and vouch for the false and fabricated evidence that anchors Fields' wrongful conviction and death sentence, and they did it with the intention to deceive, manipulate and defraud. Private Securities Litigation Reform Act of 1995 (PSLRA), 109 Stat. 737, 15 U.S.C.S. 78 u-(4)(b)(1),(2). The prosecutions willful omission that the two prior shootings was a reaction to people that both tried to murder Fields "twice", and in one case the guy was a Hit Man contracted to murder Fields was intended to create the false impression that Fields was an out-of-control violent mad man out shooting innocent people for nothing when in fact that isn't the case at all.

" A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts...reasonably calculated to deceive." Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978); United States v. Hasson, 333 F.3d at 1270-71. The omission of the material fact that the governments own expert admitted that they have forensics technology that would have still found blood in a "detailed" or "wiped down" vehicle and that the alleged "stain" was tested in two different labs and it wasn't blood is proof of material misrepresentations intended to deceive. " Intent to defraud need not be shown through active misrepresentation, material omissions can be fraudulent if they are intended to create a false impression." Citing Neder v. United States, 527 U.S.1, 25, 119 S.Ct. 1827, 1841, 144 L.Ed. 2d 35 (1999)); Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1312 (11th Cir. 2000)

The government knew that April Vasquez was lying when she said that Fields beat, raped and threatened to kill her and she would call the police and the police would "just leave".

Texas have a zero tolerance policy for domestic abuse, if anyone call the police and say that they've been "beat", "raped", and "threatened", the police isn't going to "just leave", especially if the offender is Sherman Fields, and the government know that; The police would have arrested Fields and took Vasquez in to the hospital for a rape examination, yet the government continue to use Vasquez's false narrative to defraud the Court.

" A claim of prosecutorial fraud does not rely on a new rule of constitutional law, and may not establish by clear and convincing evidence that...No reasonable factfinder would have found the applicant guilty of the underlying offense. ' It is a claim nonetheless that must be recognized." Mobley v. Head, 306 F.3d 1096, 1100-1105 (CA11 2002). " For example, if a death row inmate could show that the State indeed committed Fraud Upon the District Court during his habeas corpus proceeding, it would be a miscarriage of Justice if we turned a blind eye to such abuse of the judicial process." Abu-Ali Abdur' Rahman v. Ricky Bell, 154 L.Ed. 2d 501, 537 U.S. 88 (2002) " The Supreme Court has repeatedly held that Federal Courts possess the inherent power " to vacate [their] own judgments upon proof that a fraud has been perpetrated

18

upon the Court." Chambers v. NASCO, Inc., 501 U.S. 32, 44, 115 L.Ed. 2d 27, 111 S.Ct. 2123 (1991)(citing Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 , 88 L.ED 1250, 64 S.Ct. 997 (1944)) (" Some elements of the inherent Authority are so essential to ' The Judicial Power ', U.S. Const., Art.III, § 1, that they are indefeasible...") It's absolutely negligent of the government to keep presenting Vasquez's false narrative to the Court(s) when (1). There is no corroborating evidence; (2) She have a motive to lie; (3). The facts nor the law support her story; (4). She was prosecuted because of Fields; (5). There was no violence towards any other woman in Fields life, he have kids with two other women whom have both said that he has never been violent towards them; (6). And it was also said that Fields was never violent towards the murder victim. ( App. 42 ). The Fraud On the Court in this case is extensive; When the prosecutor blatantly lied and said that "phone records only show calls to cell phones" in order to cover up the fact that there was no call to account for Scroggins knowing such details about Colemans murder, to the willful and deliberate material misrepresentation that there were no fingerprints in the alleged carjacking vehicle all constitute fraud. The species of fraud that the government perpetrated subverted the integrity of the Court(s) itself so that the Judicial machinery could not perform in the usual manner and the impartial functions of the Court have been directly corrupted. See Pfizer Inc., v. Int'L Rectifier Corp., 538 F.2d 180, 195 (8th Cir. 1976), cert. denied, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed. 2d 751 (1977); Abdur v. Bell; Supra.

THIS COURT SHOULD GRANT THIS " EXTRAORDINARY WRIT " BECAUSE THE SAFEGUARDS PUT IN PLACE IN GREGG v. GEORGIA AND ITS PROGENCY FAILED TO PROTECT FIELDS FROM CRIMINAL ACT(S) PERPETRATED AGAINST HIM BY THE UNITED STATES GOVERNMENT.

## CONSPIRACY

Clearly establsihed Federal law defines the elements of Conspiracy as (1). An agreement between two or more persons; (2). The object of which is to do an unlawful act or a lawful act by unlawful means. ( A formal agreement need not be demonstrated as an agreement may be demonstrated by circumstantial evidence of a meeting of the minds to commit an unlawful act.) United States v. Moore, 525 F.3d 1033 (11th Cir.2008); United States v. Percel, 553 F.3d 903 (Dec. 23, 2008).

There should be no doubt that the prosecutor's and their 'witnesses" joined in a seditious conspiracy to provide false testimony to a grand and petit jury in this Capital case so they could manipulate a verdict of guilty, which would ultimately

lead to Fields murder via lethal injection. The evidence presented herein is substantial, concrete and undeniable; The perjury in the Grand Jury claiming that Fields became "angry" when he came into contact with the victim was willful, intentional, deliberate and knowing, and done with malice aforethought, not by one law enforcement officer, but by two officer's, their intent was to clearly give the Grand Jury the false impression that the alleged "anger" led to Coleman's death, so the Grand Jury would issue the indictment and put Fields a step closer to the Death Chamber so the prosecution could meet their end result.

Also, Edward Lee "treyboy" Outley, Shalaykea "Lakie" Scroggins, and the prosecutor's deliberate, willful, intentional and knowing attempt to arbitrarily conceal the Jaguar that Scroggins and Outley were in on the night of the murder so the car wouldn't be subjected to a forensics examination.

It's not like Scroggins said that the Jaguar was BLUE, Outley said that the Jaguar was BLACK, and the prosecutor said that the Jaguar was Orange, they all said that the car was BLUE while knowing all along that the car was GOLD. In order for them to come to that consensus they all had to AGREE/CONSPIRE to lie and say that the car was BLUE so the jury wouldn't have reason to question why these "innocent" government "witnesses" conspired to hide the car that they were in when Coleman was murdered.

And after Fields called Mr. Lutrill Payne to the witness stand to verify that his Jaguar was indeed GOLD the prosecutor procured a detective, Morris "Bubba" Colyer, the same guy that lied and said that the Grand Am "looked detailed" or "wiped down", to lie and say that Outley told him the name of the person that he got the Jaguar from. (See App. 27). When in reality all Outley told Colyer, according to Colyer's only report in regards to Outley is that the Jaguar was BLUE. ( App. 23 ).

Amrad Patel, the guy whom owns the New Road Inn Motel testified that police arrived at the motel on November 7, 2001, the next day after the room was rented and did a thorough search of the room. It was then that Law Enforcement discovered the name "Payne" on the daily logs, or sign-in-sheets. ( See App. 49 ). Investigators didn't talk to Outley until November 13, 2001, the day that he was arrested. It was then that they confronted him with the name Payne, based on the fact that it was said that Outley rented a room for Fields, and Outley lied, telling investigators that "Payne" was the owner of a BLUE Jaguar, in an attempt to hide the car. Because Outley knew that had the GOLD Jaguar been subjected to forensics testing he and Scroggins wouldn't have been able to explain how their blood, where the thorns at the crime scene undoubtedly cut them, got mixed in with Coleman's blood in that GOLD Jaguar; Thus the conspiracy between Outley and Scroggins to conceal that Jaguar was a necessary element/component of the overall scheme to frame Fields, and the prosecution knowingly joined into the conspiracy because they knew all along that the Jaguar was GOLD when they set about defrauding the Court because Lutrill Payne had already told them that his Jaguar was

GOLD.

And finally, the police and prosecutor's had to AGREE that every time Fields challenged the government's case with substantial, credible evidence they would use the prestige of the government to lie and mislead the jury; (i.e) No fingerprints, when there were prints that didn't match Fields; The Grand Am "looked detailed", when in fact the forensics report show that there was dirt, fingerprints, "stains", debris; Phone records only show calls to cell phones, when in fact that is not true; Fields became "angry" when he came into contact with the victim. When in fact that was not true either; the lies, deception and the conspiracy goes on and on. And whether the AGREEMENT to defraud the Court and/or to obtain Fields' conviction and Death Sentence by and through the use of false evidence was 'formal" or by and through "a meeting of the minds" there should be no doubt that the Conspiracy is complete. Conspiracy only requires that after the conspiracy is born at least one of the people commits an overt act in furtherance of the agreement. 18 U.S.C. § 371 (1982); United States v. Bell, 577 F.2d 1313, 1315 n.2 (5th Cir. 1978), cert. denied, 440 U.S. 946, 99 S.Ct. 1422, 59 L.Ed. 2d 634 (1979); United States v. Sutherland, 463 F.2d 641, 645 (5th Cir.), cert. denied, *1569409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed. 2d 668 (1972) The criminal act of Conspiracy is compounded by the fact that each time the prosecution procured someone to lie the criminal act(s) of suborning perjury and perjury was committed. " A person suborns perjury when he procures another to commit perjury." 18 U.S.C. § 1622; See also Dunnigan, 507 U.S. at 94, 113 S.Ct. at 1116 (applying definition of perjury from 18 U.S.C. § 1621, the criminal perjury statute to § 3C1.1)


## SOLICITATION OF MURDER


Under normal circumstances to find someone guilty of Solicitation of Murder for hire the jury must find, (1). That the offender intended for another person to commit murder for hire; and (2). That the offender induced or tried to persuade that other person to commit murder for hire. 18 U.S.C.S. § 373(a). United States v. Razo-Leora, 961 F.2d 1140, 1148 n.6 (5th Cir. 1992); See also United States v. Cardwell, 433 F.3d 378, 390, 91 (4th Cir. 2005). The plain language of the Statute indicates that actual movement in interstate commerce is not required for a Solicitation of Murder conviction under 18 U.S.C.S. § 373(a) c.f., United States v. Blackthorne, 378 F.3d 449, 454 (5th Cir. 2004) (" Even where a conviction for the substantive offense of federal murder for hire fails for want of interstate travel, an offender can be convicted of conspiring to commit the offense.")

It is clearly established Federal law that a Section 373(a) offense is complete when one corruptly "endeavors" to, and employs another to commit Murder-for-Remuneration; One need not prove that a murder actually occured. And as the Court of appeals noted

"remunerate" encompasses a broad range of situations, including compensation for loss or suffering, and the ideal of a "reward" given or received "because of some act". The Court's interpretation far from offering a surprising or far-fetched construction, stated the everyday meaning of the words used by Legislature. Beets, 767 S.W. 2d at 734. "180 F.3d 190:: Beets v. Johnson:: June 28, 1999(5th Cir.)

The first prong of the Murder-For-Hire Statute have been met; In Herrera v. Collins, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed. 2d 203 (1993), Justice Blackmun said that "the execution of a person who can show that he is innocent comes perilously close to simple murder". But even then, Justice Blackmun wasn't factoring in a case like Fields where the prosecution intentionally, deliberately, willfully and knowingly with malice aforethought recruited a bunch of "paid occurence witnesses" whom engaged in a criminal conspiracy to use the Justice System and the Death penalty as a murder weapon and Defrauded the Court(s) into taking away Fields' liberty with intentions of taking his life. Fields' impending demise exceeds Justice Blackmun's logic tenfold and crosses into the territory of impending murder with premeditation.

With the death penalty on the table there is no question and/or doubt what the police, prosecutors, and their "witnesses" goal and/or intent was, the end result would be death and they all knew that, so when the prosecution went "seeking jailhouse testimony", and hired these crooks to lie and procured a number of law enforcement officer's to add false substance to their case and defraud the Court(s) the prosecution intended for those crooks to "wield that sword" and commit Murder-For-Hire; Thus satisfying the first prong.

The second prong have been met as well. According to a letter that Shalaykea "Lakie" Scroggins wrote her accomplice, Edward Lee "treyboy" Outley the prosecution wanted one of them to lie and say that they were "with Fields". ( See App. 50 ). Since they were saying that Fields killed Coleman, "with Fields" could only mean that they were trying to procure a false eyewitness, thus inducing or trying to persuade Outley and/or Scroggins to use false testimony to commit murder.

Also a Chance Alexander, an inmate that the government tried to recruit/procure/ hire, an inmate that Fields don't know, changed his mind at the last minute and admitted that even though he don't know Fields law enforcement working for the prosecution tried to recruit him with the promise of "remuneration" (a reward for the act; "to lie") in this Capital Case and say that Fields confessed to him, thus inducing or trying to persuade Alexander to commit Murder-For-Hire; The second prong of Section 373(a) have been met. (See App. 51)

The notice that the prosecution is "seeking jailhouse testimony" is instrumental and offers a glimpse into the prosecutor(s) state of mind; This notice was before the government had any witnesses, and then two years later the prosecution closed their case with nothing but "jailhouse testimony", inmates whose storie(s) are demonstrably

false. Then there's the fact that the prosecution tried to procure a false "eyewitness", and hire inmate Chance Alexander to lie; Three separate and individual incidents about the prosecution seeking false and fabricated evidence from three different entities that don't even know each other. And when you add the fact that every time Fields challenged the governments case with substantial credible evidence the prosecution procured a law enforcement officer to lie and defraud the Court, there should be no doubt that the prosecution solicited and/or conspired to murder Fields via lethal injection and defrauded the Court(s) to meet their end result.

The guiding principle here is that the Court(s) should be mindful that evidence like this that's outside the record is critical to determining the truth because it bears on the prosecutions State of mind. The prosecution created a "kill zone" when they went "seeking jailhouse testimony" and procured those law enforcemnet officer's to lie and defraud the Court(s), and they engaged in conduct that caused a situation manifesting an extreme indifference to the truth seeking process, and the value of Mr. Fields life. This egregious abuse of governmental power severely violates Fields' interest and/or right in not being the subject of arbitrary authority, This kind of official misconduct involves the willful illegal exercise of discretion and it implicates substantial due process because it affects Fields' right to be free of the abuse of power, and it affects his right to Life. There should be absolutely no doubt that the major component in this malicious prosecution is the prosecution(s) Solicitation of Fields' Murder via lethal injection, which wholly, or in part contributed to Fields' wrongful conviction.

THIS COURT SHOULD GRANT THIS " EXTRAORDINARY WRIT " BECAUSE THE SAFEGUARDS PUT IN PLACE IN GREGG v. GEORGIA AND ITS PROGENCY FAILED TO PROTECT FIELDS FROM JUDICIAL BIAS AT TRIAL AND ON APPEAL.

Six months prior to Fields' trial in Andrade v. Chojnacki, 338 F.3d 448 (July 14, 2003), District Judge Walter Smith, Jr's good friend, William "Bill" Johnston was under investigation for withholding evidence in that case when Johnston was a prosecutor. Because Johnston was Judge Smith's friend, Judge Smith refused to participate in the investigation. When Judge Smith presided over Fields' case in January 2004 William "Bill" Johnston was in private practice and he was the attorney for the victim's family where he had an interest in the outcome of this case.

In order to help William "Bill" Johnston meet his end result Judge Smith vouched for the prosecution, telling them that the prosecutors would "dismiss"

the case if they thought Fields rights were being violated. (App. 35).

In order to help his friend, William "Bill" Johnston meet his end result Judge Smith forced Fields to represent himself at trial.

Fields and his attorney had a significant conflict of interest starting early on in the process. As time went on the conflict spiraled deeper as evidenced by this pro se Motion that Fields filed. ( See App. 52 ). Then a week before trial Fields found out that his attorney was once a prosecutor and he'd prosecuted Fields before; Fields immediately filed a motion for a new attorney. ( See App. 53 ).

Fields was Warned about what he could or couldn't say. ( See App. 54 ). Thus he was restricted to telling the Court that he thought his attorney(s) was working with the prosecution.

Judge Smith dismissed Fields concerns without even knowing what the conflict was and forced Fields to proceed pro se.

Right before Opening Statements Fields tried to get out of representing himself, telling the Judge, " Your Honor, I can't do this, I'm not learned in the law..." ( See App. 55 ).

Later Fields tried again to tell Judge Smith what the conflict was between him and his attorney and Judge Smith dismissed it again, stating, " I have no idea what your conflict is about, Mr. Fields. I don't want to know. That's not my business. ( See App. 56 ).
But if the conflict wasn't Judge Smith's business, and he "didn't want to know" what the conflict was about, how could he make a rational legal decision about whether or not New Counsel was warranted, if he didn't even know what the conflict was?

On Appeal Judge Smith and the 5th Circuit ruled that Fields' "decision" to represent himself was voluntary.

In order to help his friend, William "Bill" Johnston meet his end result Judge Smith made Fields wear a stun belt as a mental distraction; Judge Smith gave Fields conflicting and confusing instructions on how to proceed with the pro se representation. Judge Smith told Fields to confer with standby counsel and ask them questions, stating " that's what they are there for." And then when Fields followed his instructions he would tell Fields that he can't do that.

Judge Smith repeatedly rebuked Fields in front of the jury; Judge Smith refused to strike a juror for cause that said that he would give the Death Penalty in every case where the defendant is found guilty; Judge Smith ruled against Fields on evidence that was clearly admissible; Judge Smith stopped Fields right in the middle of cross examining the governments Star witness, Shalaykea "Lakie" Scroggins and allowed the prosecution to take over, giving the jury the impression that Fields was lying and the prosecution was the "honest ones". Judge Smith did just about any and

everything that he could to bring about Fields' wrongful conviction, and to help his friend, William "Bill" Johnston meet his end result. Judge Smith knew that he was bias and should have recused himself, but he chose to fatally harm Fields with the choices and/or decisions that he made, and then allowed the case to come back to him on appeal where he arbitrarily denied Fields habeas relief.

## THE FIFTH CIRCUIT

On Appeal to the 5th Circuit, Fields drew Judge Edith Jones, a Judge that he'd tried to recuse for her racial, religious, anti-innocence and anti-mental health views. ( See App. 57 ).

The 5th Circuit Court of Appeals just "rubber stamped" District Judge Walter Smith's denial of Fields' Habeas petition and denied COA.

Following in Judge Smith's inauspicios footsteps the 5th Circuit quoted Shalaykea "Lakie" Scroggins stating that Scroggins said that she never threatened Coleman. However the evidence in (App.45), (App.46) and (App.47) clearly disputes that and it's erroneous for the Court(s) to give such testimony false substance.

Then the Court quotes Detective Morris "Bubba" Colyer's false testimony that the Grand Am looked "detailed" or "wiped down" and erroneously said that Fields did not acknowledge it.

But as previously stated Fields did acknowledge it ( App. 5, pg 18 and App 8 ). It was the 5th Circuit that refused to consider the issue.

The 5th Circuit also said that there was "suspicious stains" that could possibly be blood. But the 5th Circuit neglected to mention that the same expert that they quoted there also said that they have technology that would still find blood. Also the alleged "stain" was tested with TMB solution and it wasn't blood. (App.28). The expert took the carpet with the "stains" anyway and sent it to the lab where those results were negative as well; Thus it's clearly erroneous for the 5th Circuit to suggest that the "stains" could possibly be blood."
And their acknowledgment of the "stains" defeat their first argument that the vehicle "looked detailed" or "wiped down"; How is it that the vehicle "looked detailed" or "wiped down" when in fact there are stains that is significant enough to be tested?

Then the 5th Circuit said that Fields do not contend that "witness coaching" took place. " Furthermore, there is no indication of coaching, such as through baseless objections, or the use of non-verbal cues. In fact, the prosecution's objections were not baseless, and nearly all were sustained." (5th Circuit Opinion in denial of COA ).

However, Fields did in fact allege witness coaching in the brief that the 5th Circuit rejected. In one such incident, Edward Lee "Treyboy" Outley told Christian "Chae" Walker to lie and say that he gave him the alleged murder weapon. (See App. 58).

25

And when Walker didn't know what kind of gun it was, Detective Morris "Bubba" Colyer "coached him". ( See App. 59 ).

And when Fields attempted to impeach Scroggins Alibi where she claimed that she walked to the store. ( See App. 60 ), the prosecutor objected, claiming that it wasn't relevant and Judge Smith erroneously sustained the objection. ( See App. 61 ) Thus the 5th Circuit's opinion that there was "no coaching", no "baseless objections" are clearly erroneous. In closing the prosecutor even bragged to the jury that he was making baseless objections. ( See App. 62 ).

The prosecutions misconduct got so bad Fields standby counsel took it upon themselves to bring it to the attention of the Court. ( See App. 63 ).

Another issue where the 5th Circuit denied relief erroneously is when at trial Fields asked Edward Lee "treyboy" Outley had the government made him any promises and Outley lied and said no. ( See App. 64 ). The prosecution didn't even attempt to correct him.

In denial of Fields' COA the government steered the Court towards Judge Smith's erroneous ruling where Judge Smith said that " it is unclear whether Outley understood the general question posed to him."
However the evidence show that Outley did indeed understand the question. Outley wrote a letter stating that he could have got 5k.1. ( See App. 50 ). That letter is what spurred the question about the government making him any promises.
When Outley lied and said that the government hadn't made him any promises, Judge Smith falsely claimed that Fields didn't "follow up with questions". But Fields did indeed follow up. ( See App. 65 ).

The letter where Outley said that he could have got 5K1 and Fields' questions about 5k1 clearly show that Outley did indeed understand that Fields was asking him if he'd received a deal for his testimony.

Then the prosecution said, " Even if Fields could show that the government suppressed the nature of Outley's immunity deal, he cannot show that it would undermine confidence in the verdict." Judge Smith and the 5th Circuit Court of Appeals agreed with the prosecution with no regards for the true facts. If the government had not given Outley broader immunity Outley would have truthfully testified that he didn't give Fields a gun, as evidence by the many times Outley denied giving Fields a gun. And in that case the only person the alleged murder weapon could be traced back to is Outley himself, because it was Outley that implored Walker to lie and say that he gave him the gun.

The Evidence, rulings and opinions conclusively show that both Judge Smith and Judge Edith Jones was bias.

## ARGUMENT

" A fair trial in a fair tribunal is a basic requirement of due process." Caperton v. A.T. Massey Coal, Inc., __U.S.__, 129 S.Ct. 2252, 2259, 173 L.Ed. 2d 1208(U.S. 2009) (internal citation omitted). It is clear that there was nothing fair about Fields' trial or the tribunal in which it was held. Judge Smith should have recused himself. " The Supreme Court has held that Actual Bias and the appearance of bias violate due process principles "; Bracy v. Schoming, 286 F.3d at 410-11; See Bracy, 520 U.S. at 905 (actual bias). " Absent a "smoking gun", a petitioner may rely on circumstantial evidence to prove the necessary bias." Bracy, 286 F.3d at 411-412; id. at 422 (Posner, J., concurring in part; dissenting in part ); id. at 431 (Rovner, J., concurring in part; dissenting in part ). Judge Smith's ruling(s) only highlights his bias erring in favor of his friend, William "Bill" Johnston. " A district Court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or make findings of fact that are clearly erroneous." Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1309 (11th Cir. 2001). Judge Smith telling Fields that he "don't know" what the conflict was between Fields and his attorney, and stating that he "don't want to know", yet refusing to appoint new counsel without even knowing if new counsel was warranted was an abuse of discretion and a testament to Judge Smith's bias.

On Appeal Judge Smith denied habeas claiming that Fields couldn't show that false evidence was used against him without even granting Fields an evidentiary hearing to prove it; That was an abuse of discretion and a testament to Judge Smith's bias.

" The Due Process Clause may sometimes bar trial by Judges who have no Actual bias and who would do their best to weigh the scales of Justice equally between contending parties." ( citing In re Murchison, 349 U.S. at 136 ). Judge Smith made it absolutely clear that he could not weigh the scales of Justice equally between Fields and the prosecution when he vouched for the prosecution telling juror Donna Williams that the prosecution would dismiss the case if they thought Fields' rights were being violated, and then told the jurors that the indictment meant that it was "more likely than not" that Fields had committed the offenses in the indictment; Judge Smith's bias led to Fields' wrongful conviction and Death Sentence, as well as the arbitrary and erroneous denial of Fields' Habeas Petition and COA.

### THE 5th CIRCUIT

Judge Edith Jones should have recused herself as well. See Liljeberg v. Health

Service Acquisition Corp. (1988) <u>486 U.S. 847</u>, <u>100 L.Ed. 2d 855</u>, 108 S.Ct. 2194. Her bias against minorities, the innocent, and the mentally ill is reflected in the 5th Circuit(s) erroneous opinion(s) in denial of Fields' COA. " The law cannot directly or indirectly give Judge Jones' personal bias effect." Palmore v. Sidoti, <u>466 U.S. 429</u>, 433, <u>80 L.ED. 2d 421</u>, 104 S.Ct. 1879 (1984). " The 14th Amendment views racial bigotry as an evil to be stamped out, not as an excuse for perpetual racial tinkering by the State." See DeFunis v. Odegaard, <u>416 U.S. 312</u>, 342, 94 S.Ct. 1704, <u>40 L.Ed. 2d 164</u> (1974) (Douglas J., dissenting). The 5th Circuit quoting Detective Morris "Bubba" Colyer's false testimony that the Grand Am "Looked detailed" or "wiped down" and referencing James Blair's testimony that there was a "stain" without acknowledging that james Blair also said that they have technology that would have still found blood, and the "stain" was tested and it wasn't blood, serves to highlight Judge Jones' bias; her inclination to lend false credence to the prosecution's case proves that her racial discrimination is not benign. "[B]enign carries with it no independent meaning, but reflects only acceptance of the current generation's conclusion that a politically acceptable burden, imposed on particular citizens on the basis of race, is acceptable." See Metro Broadcasting, Inc. v. FCC, <u>497 U.S. 547</u>, 609, 110 S.Ct. 2997, <u>111 L.Ed. 2d 445</u> (1990) (O'Connor, J., dissenting). " It is for this reason that the Supreme Court has repeatedly held that strict scrutiny applies to all racial classifications, regardless of whether the government has benevolent motives." See, e.g., Johnson, 543 U.S., at 505, 125 S.Ct. 1141, <u>160 L.Ed. 2d 949</u> ("We have insisted on strict scrutiny in every context, even for so-called 'benign' racial classifications"); <u>Adarand</u>, 515 U.S. at 227, 115 S.Ct. 1097, 132 L.Ed. 2d 158; Judge Jones' bias led to the erroneous, arbitrary and capricious denial of Fields' C.O.A.

THIS COURT SHOULD GRANT THIS " EXTRAORDINARY WRIT " BECAUSE (a) THE 5th CIRCUIT's REFUSAL TO ACCEPT FIELDS' PRO SE BRIEF ALLOWED THE PROSECUTION'S VIOLATION OF <u>BRADY v. MARYLAND</u> TO GO UNADJUDICATED: AND (b). THE SAFEGUARDS PUT IN PLACE IN <u>GREGG v. GEORGIA</u> AND ITS PROGENCY FAILED TO PROTECT FIELDS FROM THE PROSECUTION(S) <u>VIOLATION OF BRADY</u>.

Under <u>Brady v. Maryland</u>, <u>373 U.S. 83</u>, 83 S.Ct. 1194, <u>10 L.Ed. 2d 215</u> (1963), the government must disclose material, exculpatory (397 Fed. Appx. 971) evidence to a criminal defendant. <u>United States v. Walters</u>, <u>351 F. 3d 159</u>, 169 (5th Cir. 2003) (citing Brady, 373 U.S. at 87). " A valid Brady complaint contains three elements; (1) the

prosecution must suppress or withhold evidence; (2) which is favorable, and (3) material to the defense." United States v. Lanford, 838 F. 2d 1351, 1355 (5th Cir. 1988 )( quoting United States v. Auten, 632 F. 2d 478, 481 (5th Cir. 1980)). Impeachment as well as exculpatory evidence fall within Brady's purview. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed. 2d 481 (1985); Fields meets all three prongs of Brady. Prior to trial Counsel for Fields filed a Motion for discovery pursuant to Rule 16 and was supposedly given " open file discovery ". The Motion specifically requests the timely disclosure of Photographs, documents, tangible objects, results or reports of scientific tests or experiments, and disclosure of written summaries of testimony of expert witnesses. ( See Motion; App 66 ). The prosecution never turned over the pre and post forensics photographs, effectively suppressing and/or withholding the evidence; the first prong of Brady have been satisfied.

The second prong of Brady is just as clear. The photographs is favorable to the defense because the evidence is exculpatory and it's impeaching; The photographs prove unequivocally that Detective Morris "Bubba" Colyer lied and defrauded the Court via the prosecution when he said that the Grand Am was "clean" and had been "detailed". But most importantly the jury, during deliberations at the guilt/innocence phase only had one question: They wanted the " testimony (or evidence, if it's available) of the results of DNA testing on the car..." ( See Jury note; App. 31 ).

The district Judge, Walter Smith, Jr. denied the jurors request. ( See Judges response; App.32 ). If the jury would have remembered and/or knew the testimony in regards to the forensics testing and the state or condition the vehicle was in they wouldn't have been requesting the information; thus the jury had nothing to rely on. If the prosecution would have honored their duty to disclose then Fields would have impeached Detective Colyer's willfully false testimony with the photographs and the photographs would have been in evidence for the jury to use in their deliberations; There is no doubt that the photographs are favorable. The third prong has been met as well. " Testimony is material if it was designed to substantially affect the outcome of the case. United States v. Como, 53 F. 3d 87, 90 (5th Cir. 1995). " Detective Colyer's false testimony about the car being "clean" and "detailed" was definitely designed to substantially affect the outcome of the case. The prosecution procured Detective Colyer to testify falsely with malicious intent in order to defraud the Court into believing that Fields killed Coleman and then "detailed" the car so there was no blood where blood should have been. Since the jury's only question in regards to the entire guilt/innocence phase was in regards to that car, the photographs proving that the car wasn't "clean" and/or "detailed is definitely material

" The materiality of Brady material depends almost entirely on the value of the evidence relative to the other evidence mustered by the State." Smith v. Black, 904 F.2d 950, 967 (5th Cir. 1990), vacated, 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed. 2d 609 (1992), abrogated on other grounds, Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed. 2d 367 (1992). The government's entire case against Fields is "jailhouse testimony", inmates whose stories are so incredulous it defies description. And not only do Outley and Scroggins ties to these inmates appear to be of great influence upon their testimony, but very strong evidence proves that the inmates were likely solicited by the prosecution. ( See App. 33 ).

Thus the withheld photographs proving that the car that Fields was in on the night of Coleman's murder was not "clean" and/or "detailed" like the prosecution procured Detective Morris "Bubba" Colyer to lie and defraud the Court into believing is definitely material to Fields innocence. And since the jurors one and only question in regards to guilt/innocence was in relation to the car that the photographs are in relation to it shows unequivocally without any doubt that the photo's are material.

In addition to that Detective Colyer lied and defrauded the Court about the car being "clean" and/or "detailed" to hinder, impede and willfully thwart by illegal means the fact that the people whom Fields said committed the murder, both Edward Lee "Treyboy" Outley and Shalaykea "Lakie" Scroggins were conspiring to hide the Jaguar that they were in on the night of Coleman's murder, and had the prosecution honored their duty not only to disclose, but their duty of honesty to the Court as well the jury would have undoubtedly moved towards a verdict of " Not Guilty." And the Court have held that " If the prosecution withholds evidence that satisfies the above definition of materiality, then harmless error analysis is inapposite and relief is warranted. See <u>Kyles v. Whitley</u>, <u>514 U.S. 419</u>, 435, <u>131 L.Ed. 2d 490</u>, 115 S.Ct. 1555 (1995).

THIS COURT SHOULD GRANT THIS " EXTRAORDINARY WRIT " BECAUSE THE SAFEGUARDS PUT IN PLACE IN <u>GREGG v. GEORGIA</u> AND ITS PROGENCY FAILED TO PROTECT FIELDS FROM THE COURT'S UNREASONABLE APPLICATION OF THE LAW AND THE FACT(S).

On Direct Appeal to the 5th Circuit Counsel for Fields argued that photographs of the victim were inflammatory. The Court admits that " many of the photo's are shocking," but states that " The photo's showing the victim's body decomposing were highly probative. One of Fields's key themes at trial was that the government had little physical evidence linking him to the crime. In his opening statement, for example, Fields argued that it was "not possible" to commit murder in the time and manner in which the government witnesses allege and not leave any physical evidence..." The 5th Circuit held that the photo's were necessary to rebut Fields' argument. The photo's " helped explain why little physical evidence was found; because it had been carried away by animals or worn away by the elements. ( 483 F. 3d 313 ).

In another 5th Circuit case out of Jefferson County Louisiana ( Damon Thibodeaux), the prosecution used the exact same argument claiming that animals carried the DNA away and an expert successfully defeated that argument, stating that " animals don't carry away DNA." Mr. Thibodeaux was found to be innocent and freed from Death Row. The finding of "false facts" against Sherman Lamont Fields, an innocent man is extremely prejudicial and places an impossible burden on an innocent man; There was no physical evidence because Fields didn't kill Coleman, and the physical evidence that was found exonerates Fields. We are here today because the prosecution chose to turn criminal and defraud the Court(s). The disturbing fact that Shalaykea "Lakie" Scroggins and Edward Lee "Treyboy" Outley

30

conspired to hide that Jaguar is what's significant here; That's where the missing DNA is, in that GOLD Jaguar, and instead of the prosecution conceding that, they chose to knowingly and willfully align themselves with a criminal venture and aid and abett Scroggins and Outley, thus the 5th Circuit's decision to Aid the prosecution's deception is clearly erroneous, especially in light of the fact that the prosecution set out to willfully defraud the Court(s).

In addition to that, and what the Courts have failed to acknowledge in light of the prosecutions deception and criminal act(s) is that on/or around May 2003 the prosecution approached the defense claiming that they went back, searched the victim's clothes and found a hair. The trial was scheduled for the end of 2003, but an extension delayed the trial while the hair was tested. The prosecution then retrieved two envelopes of head and pubic hair from Fields.

After testing the prosecution told the defense that "they got a match, the hair belong to Fields." Counsel for Fields didn"t see it as a big deal " because everyone knows that Fields was with Coleman," but Fields insisted that, in Fields' words, " The prosecution is trying to do something slick." Counsel asked the Court for funds to hire an independent DNA specialist and testing confirmed that the prosecution was indeed " trying to do something slick." The hair was African American but it wasn't Fields'. The prosecution then said that they weren't going to use the hair anyway; That's when they informed the defense that they had several inmates that were going to say that Fields confessed to them; Enter Homero DeLeon, Kevin Burton, Jerry Reed, John Mercer, and later Christian "Chae" Walker.

Fields had every right to expound upon the fact that these inmates were lying and the DNA didn't match because that's the truth, and the real evidence supports that. The erroneous judgement that the 5th Circuit made in favor of the government on Direct Appeal is a testament to the fact that the prosecution did and continue to Defraud the Court(s), which is not only a violation of Fields' Civil and Constitutional rights, but it lends credence to the fact that the prosecution's actions are criminal indeed. The Fraud On The Court led the 5th Circuit to an unreasonable determination of the facts.

Also on Direct Appeal the 5th Circuit focused on the testimony of inmate Kevin Lamar Burton, a man that Fields don't know and had never seen before until he got up on the witness stand and lied. At trial the prosecution led Burton into perjury by asking questions that suggest the desired answer; (i.e) Have he ever tried to rob you? (App. 67 ). Nowhere in Burton's statements do Burton ever say that Fields tried to rob him. In any event Burton followed the prosecutor's lead and claimed that a William Hayes told him that Fields was going to rob him, Hayes told Fields not to do it, then Fields just came out and confessed to Burton that he'd killed Coleman.

On appeal the 5th Circuit said that because Fields challenged Burton's false testimony and said that it was fabricated any prosecutorial misconduct and 404(b) violations in regards to Burton was appropriate. ( 483 F.3d 313 ). Again, this erroneous ruling places an impossible burden on an innocent man and places the 5th Circuit in the awkward position of Aiding and Abetting these criminals. There is no doubt that Burton is lying; Shalaykea "Lakie" Scroggins started corresponding with Christian "Chae" Walker

in October 2002 and shortly thereafter Walker was sent to Three Rivers Federal Prison with Burton. It was then that Burton "came forward". Burton claimed that on November 16, 2001 Fields was in a four door red Grand Am and Outley was "in a Jaguar". Burton said that they were all on Proctor Street in Waco, Texas.

There are several things that an honest prosecutor would have noticed in Burton's story besides the fact that it's incredulous; The Grand Am was a two door, not a four door, and it's a proven fact that it was no longer in Fields possession after the night of the murder, which was ten days prior. And the Grand Am went to the forensics lab on the 14th so there is absolutely no way Burton could have encountered Fields in the Grand Am on the 16th like he claim. In addition to that the Jaguar was no longer in Outley's possession after the night of the murder, and Outley went to jail on the 13th, so there is absolutely no way possible Burton saw Outley in the Jaguar on the 16th. Burton's testimony was indeed false  and the prosecution knew that, yet they intentionally, deliberately, willfully and knowingly, with malice aforethought "hired" Burton to Aid and Abet in their Conspiracy to use false testimony to murder Fields via lethal injection. However, if the Court(s) would have been non-bias, fair and honest Fields, (1). Would have been afforded the evidentiary hearing that he petitioned the Court for; (2) Would have been allowed to proceed with his timely pro se brief and motions that the Court(s) refused to consider; And (3). The Court wouldn't have used an unreasonable application of the facts and the law on the issues that are undoubtedly clear. There should be no doubt that Fraud on the Court(s) and Judicial Bias played a significant role in the illegal and unconstitutional denial of Fields' appeal.

### THE 5TH CIRCUIT'S CLAIM THAT SCROGGINS NEVER THREATENED COLEMAN

Scroggins wrote two letters bearing on her state of mind. Four months prior to Coleman's death Scroggins wrote the letters expounding upon her obsession for Fields. She talked about how she'd lost Fields to Coleman once, and said, " I will not let it happen again." And if she were to lose Fields, she would be " killing bitches." ( See App. 45 ).

A week before the murder Scroggins approached Coleman and they got into a very heated argument. ( See App. 46. ). The only reason the alterca ion didn't turn physical that day is because Fields' mother arrived and broke it up.

Also Scroggins went and got a phone turned on in Fields name. She immediately started calling Coleman threatening her. The day before the murder Fields and Coleman called the phone company together, and Coleman told them that Scroggins illegally got the phone turned on in Fields name and she was calling her house threatening her. ( See App. 47 ).

Because of the prosecution's Fraud On the Court it led the 5th Circuit to give an opinion that's clearly inapposite the facts, logic, and the law.

32

# THE 5TH CIRCUIT'S ERRONEOUS RULING
## IN REGARDS TO THE FORENSICS

After Fields brought up the fact that the Grand Am that he was driving that night was cleared by forensics and Outley and Scroggins conspired to hide that Jaguar the prosecution procured Detective Morris "Bubba" Colyer to lie and say that the Grand Am " looked detailed " and/or " wiped down ". The 5th Circuit referred to this false testimony in their denial of Fields C.O.A. as a way to explain the lack of blood in the Grand Am. They also said that Fields could have cut his legs on the thorns at the crime scene and his legs could have healed by the time he went back to jail two weeks later. And the Court referred to the testimony of the government's forensic expert where he said that he found a "stain" that he thought could possibly be blood.

(2). The owner of the Grand Am, Mr. Roger Thomison, he worked construction, which is a very dirty job; He also rented his car out daily to various individuals for crack cocaine. ( See App. 68 ). There is no way possible that car was "detailed" or "wiped down" on November the 6th when the murder occured and it was still "clean" on November the 14th when Detective Colyer took possession of the car. (NOTE: Fields maintains that the car wasn't "detailed" or "wiped down".

(3). Also the forensics reports show that the car wasn't "detailed" or "wiped down". ( See App. 28 ).

(4). There are photographs of the car pre and post forensics testing that will undoubtedly show that the car wasn't "detailed" or "wiped down". ( See App. 28 ).

(5). And what the 5th Circuit failed to acknowledge is that the same forensics expert that they referenced also said that he tested the "stain" with TMB solution and it wasn't blood. ( See App. 28 ). But he took the carpet anyway and sent it to the lab. And the lab results were also negative. ( See App. 30 ).

(6). But most importantly the forensics expert also said, and the 5th Circuit failed to acknowledge is that " even if a car is detailed they got technology that will still find blood." ( See App. 29 ).

Thus there is no way Fields could have killed Coleman because, even assuming the Court is correct and any wounds sustained from the thorn bushes could have healed, Fields' blood where the thorns would have cut him, along with the blood from Coleman's wounds would have still been found in that Grand Am.

In addition to that the Court fails to acknowledge that the victim's blood, along with Scroggins and Outley's blood must have been in that Jaguar. What other reason would they have for conspiring to hide the car?

There is no doubt that the prosecution's Fraud On the Court led to the 5th Circuit handing down an opinion that's inapposite the facts, it's inapposite the law, it's inapposite logic, and it's inapposite science. It's clear that Outley and Scroggins committed this murder, the prosecution fabricated the evidence to convict Fields, and the Fraud On the Court(s) have led to the Court's clearly ignoring factual evidence. The Court's are saying that the government's "word of mouth" case is more credible than forensics when in fact that have never held true in any case. ( Especially in light of all of the evidence proving that the inmates that the government procured to lie are indeed lying.)

33

## THE 5TH CIRCUIT'S CLAIM THAT
## THE PROSECUTION'S OBJECTION'S
## WERE NOT BASELESS

(1). Shalaykea "Lakie" Scroggins gave several different alibi's for the time of Coleman's murder. In one alibi Scroggins claimed that she was at the store " buying a box of black and mild cigars and something to drink." However the store was closed at the time that she claim that she was there. When Fields tried to impeach her alibi the prosecution objected and Judge Smith sustained the objection, ruling that it wasn't relevant. ( See App. 61 ). When in fact Scroggins " alibi " absolutely was relevant.

(2). Then in closing the prosecutor bragged to the jury how he'd made all of these baseless objections. ( See App. 62 ).

(3). The prosecution's misconduct got so bad Fields' stand-by counsel took it upon themselves to bring it to the attention of the Court. ( See App. 63 ).

The prosecution's Fraud On the Court led to the 5th Circuit finding that " the prosecution's objection's were not baseless, and nearly all were sustained." It's clear here that the Judge was sustaining objections that were truly legal and valid. ( This is only one such incident of many ). And the objections were "baseless", even the prosecution admits that while bragging to the jury. Also stanby counsel for Fields objected to the prosecution's illegal and unethical actions.

## EDWARD LEE "TREYBOY" OUTLEY'S
## LIE THAT THE GOVERNMENT HAD
## MADE HIM NO PROMISES

(1). At trial Fields asked Outley had the prosecution made him any promises?
Outley lied and said no; The prosecution didn't even attempt to correct him. In Smith v. Kemp, 715 F.2d 1459, 1463 (11th Cir.) cert. denied 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed. 2d 699 (1983), the Court held that " If false testimony surfaces during a trial and the government has knowledge of it, the government has a duty to step in and disclose." ( The government must affirmatively correct testimony of witness who fraudulently testifies that he has not received a promise of leniency in exchange for his testimony.)
The government referred to the District Court's erroneous ruling where the Court said that it was unclear whether Outley understood the general question posed to him. Id. ( Brief in opposition of C.O.A. pgs. 63-64.)
The letter that Outley wrote Fields' attorney ( App. 50 ) is what spurred the question. In the letter Outley said, " I could have got 5K1." When Outley lied and said that the government hadn't made him any promises, the Court erroneously ruled that Fields didn't follow-up with questions. But Fields did indeed follow-up, asking Outley about the 5K1 program. ( See App. 65 ). The letter where Outley say that he could have got 5K1 and Fields questions about 5K1 show that Outley did indeed understand that Fields was asking him if he'd received a deal for his testimony.
Thus it's no surprise that the prosecution would then essentially say: " So what if we suppressed the nature of Outley's immunity deal?" stating: " Even if Fields could show that the United States suppressed the nature of Outley's immunity " he cannot show that it would undermine confidence in the verdict. ( Brief in opposition of C.O.A. pg. 62 ).
In denying Fields C.O.A. the 5th Circuit agreed with the prosecution and the District Court. (ROA pg. 46 of 62 ) The prosecution's Fraud On the Court led to the 5th Circuit's unreasonable opinion in regards to Outley's lie.
(a) If the government had not given Outley broader immunity Outley would have testified that he didn't give Fields a gun, as evidenced by the many times that Outley denied giving Fields a gun, and in that case the only person the alleged murder weapon could be traced back to is Outley himself, because it was Outley himself whom admits to at some point having the gun.

(b). Fields have called into question the governments entire case, the only solid evidence pertaining to Outley is that he gave multiple alibi's for the time of the murder; he conspired with Scroggins to hide the car that they were in on the night of the murder so it wouldn't be subjected to forensics testing ; He told William Young that Coleman was "shot in the head two times" when he wasn't supposed to know that; He procured "Shae" Walker to lie and say that he gave him the alleged murder weapon. Also Outley is known to lie and say that guns belong to other people. ( See App. 69 ). And he lied about not receiving a deal; Thus the 5th Circuit's decision is inapposite clearly established federal law and relief is warranted. See Kyles v. Whitley, 514 U.S. 419, 435, 131 L.Ed. 2d 490, 115 S.Ct. 1555 (1995).

In other cases where Outley falsely implicated others, as in the aforementioned ( App. 69 ) where Outley tried to put the gun off on his cousin, Calvin Rollins and/or his girlfriend's brother, Willie Hampton, the government successfully exposed Outley, stating that Outley was a liar and was "trying to get himself "out of a pickle". ( See App. 70 . But when it came to Fields and the alleged murder weapon the prosecution didn't even attempt to check and see if Outley was lying even when Outley kept going from, " No I didn't give Fields a gun " to " Yeah I gave Fields a gun ". The government even knew that Outley told Walker to lie and say that he gave him the gun for Fields. But simply put, the government didn't care if Outley was lying in this instance because the government "wanted Fields". Instead the government aligned themselves with Outley's criminal venture, allowed Detective Morris "Bubba" Colyer's coaching of "Shae" Walker to go unacknowledged and then "paid" Walker via a time reduction, and "paid" Outley via full immunity for their lies and deception, while all the time committing Fraud On the Court. And the prosecution's Fraud On the Court led to the 5th Circuit handing down an opinion that's inapposite the facts and the law.

" Under the unreasonable application " clause, the Court's application of federal law must be "objectively unreasonable". See Wiggins, 539 U.S. at 520-21 (citing Williams v. Taylor, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000) (internal quotation marks omitted). There is no doubt that the Fraud On the Court led to the 5th Circuit violating the "unreasonable application" clause.

THIS COURT SHOULD GRANT THIS " EXTRAORDINARY WRIT " BECAUSE THE SAFEGUARDS PUT IN PLACE IN GREGG v. GEORGIA AND ITS PROGENY FAILED TO PROTECT FIELDS FROM THE CRIMINAL ACT OF PERJURY.

The night that Fields was rearrested following his departure from the jail Law Enforcement surrounded the apartment of a convicted sex offender named Hubert Steadman after Steadman, his then girlfriend, and another government witness, Christian "Chae" Walker lured Fields to Steadman's apartment in anticipation of collecting some reward money for Fields' arrest.

Walker had informed Fields that "two brothers" and several other guys were looking for Fields with firearms. Walker offered Fields a gun to protect himself. Walker gave Fields the alleged gun of unknown caliber but told Fields that he would have to go get the gun from Walker's childhood friend, Hubert Steadman...

Fields went to Steadman's house where Steadman claimed that he'd let "a friend" borrow the gun. Steadman told Fields to " sit tight " while he went to get the gun. Steadman left the house and called the police. The police surrounded the house and Fields surrendered without incident.

U.S. Marshal Parnell McNamara claimed that he asked Fields did he have a gun and Fields said yes and told McNamara where to find the gun. ( See Direct exam. of Parnell McNamara, pgs. 1556 -1557; App. 71 ) 35

However, Hubert Steadman admits that it was he whom claimed that Fields had a gun, Steadman said that the Marshals went into the apartment looking for the gun but couldn't find it, so he, Steadman went in and "found" the gun for them. ( See App. 72 ) The arresting officer also admits that Fields was not questioned at the scene, with the exception of being asked his name. The .22 found was obviously not the murder weapon, but Marshal McNamara's false testimony is the sole evidence supporting a felon in possession conviction, and a using and carrying a firearm during crime(s) of violence. It is this type of false evidence that Gregg v. Georgia failed to anticipate, combined with Judicial Bias it places the defendant in a no-win situation.

The deception didn't stop there. William "Skeeter" Young, an inmate that Edward Lee "Treyboy" Outley was in Beaumont Federal Penitentiary with, and whom Outley once sold drugs for in the late 1980's/early 1990's said that Outley told him that Coleman was "shot in the head twice". ( See App. 73 ). The government scrambled to find a "witness" to counter Young's testimony. Young had came forward in anticipation of using what Outley told him to make a deal to testify against Fields, but because Fields had never been to Beaumont Federal prison and had never been in Young's presence the government couldn't use Young to lie like they'd used the other crooks to lie. But Young's testimony could be used to impeach Outley. Outley had consistently said that Fields admitted to killing Coleman, but before Fields could go into details Outley had stopped Fields and said that he don't want to know. ( See App. 74 ). If Outley was telling the truth then he wasn't supposed to know that Coleman was "shot in the head twice".

The prosecution immediately procured ATF Agent Douglas Kunze to lie and say that he talked to William Young the day before and Young said that he don't even know Outley. ( See App. 75 ). That was a blatant lie and a willful and deliberate means of defrauding the Court. Outley admitted that he do know William "Skeeter" Young. ( See App. 76 ). And William "Skeeter" Young admits that he's known Edward Lee "Treyboy" Outley since he was a child. ( See App. 77 ).

But there's an even bigger problem here. Agent Kunze claimed that he talked to William Young the day prior. Fields supoenaed William Young AD TESTIFICUNDUM. ( See App. 78 ). Fields also had the Motion sealed so the government wouldn't know who he was supoenaing. ( See App. 79 ). William Young could provide no evidentiary value to the governments case and thus was not supoenaed by the government, the government wasn't even supposed to know that Young was in Waco. That means that either Judge Smith or someone around the Judge was leaking confidential information to the prosecution.

There is no doubt whatsoever that the prosecution intentionally, deliberately, willfully and knowingly used law enforcement officer's to mislead the jury and defraud the Court. Every time Fields impeached one of their witnesses and/or challenged their case with substantial and credible evidence the prosecution procured law enforcement to lie, using them to defraud the Court into overlooking the real evidence that exonerates Fields and implicates Edward Lee "Treyboy" Outley and Shalaykea "Lakie" Scroggins in Coleman's murder.

The Court's have held that " the supervisory powers of the Courts is

36

reserved to protect the integrity of the federal courts. United States v. Chiavola, 744 F. 2d 1271 , 1274 (7th Cir. 1984). The policy is concerned with the extent to which fraud on the courts converts the courts into an instrument of the party's deception. cf. McNabb v. United States, 318 U.S. 332, 347 87 L. Ed. 819, 63 S.Ct. 608 ( Court is not concerned with law enforcement " except in so far as the courts themselves become instruments of law enforcement.) Chiavola, 744 F. 2d at 1274 ( fraud on the court common factor in cases in which Courts have exercised their supervisory power.) Recognizing a Court's inherent authority to correct injustice perpetrated through it by a party's lying in Court is not novel , and does not augment a Court's power regarding probation beyond what congress allowed. Fields have shown by clear and convincing evidence that the government pollinated, primed and pumped witnesses to testify to a parade of perjury. The Supreme Court has defined perjury in the contect of an obstruction of justice sentencing enhancement as " false testimony concerning a material matter with the willful intent to provide false testimony." United States v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L. Ed. 2d 445 (1993). There is no doubt that the perjury was willful and deliberate and it was intended to defraud the Court in regards to everything material. The Dunnigan example leaves no doubt that the violation is indeed criminal, and the prosecution cannot, up under any circumstances commit criminal act(s) in the pursuit of "justice". ( Bearing in mind that this isn"t justice sought, but a deliberate and willful malicious prosecution.) The Supreme Court have held that knowingly false or misleading testimony by a law enforcement officer is imputed to the prosecution; Wedra v. Thomas, 671 F. 2d 713, 717 n.1 (2d 1982); Curran v. Delaware, 259 F. 2d 707, 712-713 (3d Cir. 1958) (citing Pyle v. Kansas, 317 U.S. 213, 87 L. Ed 214, 63 S.Ct. 177 (1942); The knowing use of perjured testimony constitutes a due process violation as defined in Kyles v. Whitley. The government knew that Detective Spillman and Marshal Casson was lying when they said that Fields became "angry" and/or "irate" when he came into contact with Coleman at the hospital; The government knew that Detective Morris "Bubba" Colyer was lying when he misled the jury and said that Outley told him the name of the man who owns the Jaguar; or when Detective Colyer lied and said that the Grand Am was "clean" and "detailed"; The government knew that Detective Steve January was lying when he said that there was no fingerprints in the alleged carjacking vehicle; The government also knew that those prints had been checked against Fields' prints and it didn't match. Just as the government knew that had the Grand Am been "detailed" they still would have found blood and there was no blood; The government also knew that Fields didn"t tell Parnell McNamara that he had a gun and where to find it when he was arrested. The aforementioned leaves no doubt that the prosecution used an "unconscionable plan and/or scheme " to improperly influence the Court's decision by fabricating evidence, using law enforcement officer's to improperly and illegally staunch every material fact in Fields' favor, and to hide, suppress, conceal and/or withhold exculpatory and impeachment evidence.

( See ); <u>Rozier v. Ford Motor Co.</u>, <u>573 F. 2d 1332, 1338</u> (5th Cir. 1978); <u>United States v. Hasson</u>, 333 F. 3d at 1270-71; ( A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts...reasonably calculated to deceive...") (citing <u>Neder v. United States</u>, <u>527 U.S.1</u>, 25, 119 S.Ct. 1827, 1841, <u>144 L. Ed. 2d 35</u> (1999)); <u>Langford v. Rite Aid of Ala., Inc.</u>, <u>231 F. 3d 1308, 1312</u> (11th Cir. 2000) ( " Intent to defraud need not be shown through active misrepresentation-material omissions can be fraudulent if they are intended to create a false impression.") The innuendo, half truths, rhetorical hyperbole and outright willful lies herein, calculated by the prosecution to defraud prevented Fields from fully and fairly presenting his case and/or defense; <u>Frederick v. Kirby Tankships, Inc.</u>, <u>205 F. 3d at 1287</u> (11th Cir. 2000); <u>Scutieri v. Paige</u>, 808 F. 2d at 794 ( 11th Cir. 1987 ); <u>Rozier v. Ford Motor Co.</u>, <u>573 F. 2d 1332</u>, 1339 (5th Cir. 1978). The prosecutors violated their duty of honesty to the Courts. <u>Sawyer v. Collins</u>, 986 F. 2d 1493, 1497 (5th Cir. 1993); citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L. Ed. 2d 1090 (1983). The species of fraud that they perpetrated subverted the integrity of the Court(s) itself so that the judicial machinery could not perform in the usual manner and the impartial functions of the Court have been directly corrupted. See <u>Pfizer inc., v. Int'L Rectifier Corp.</u>, 538 F. 2d 180, 195 (8th Cir. 1976), cert. denied, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed. 2d 751 (1977); The government withholding the photographs is an extension of their fraud on the Court.

Because the prosecution have those photographs in their possession; And they also have the forensics reports in their possession that shows that the car wasn't "clean" and/or "detailed"; And they also know that even if a vehicle is "detailed" they still would find blood, there is no doubt that the prosecution knew that Detective Colyer's testimony was false. And clearly established Federal Law states that the government has a duty not to use false testimony; <u>Giglio v. United States</u>, 405, 150, 92 S.Ct. 763, 766, 31 L.Ed. 2d 104 (1972); <u>Williams v. Griswald</u>, 743 F.2d 1533, 1541 (11th Cir. 1984). There is no statement from Detective Colyer, no report; Nothing in relation to the car being "clean" and/or "detailed", the government made a sudden and conscious decision to put this detective up on the stand at the spur of the moment so he can defraud the Court and mislead the jury. In <u>Napue v. Illinois</u>, 360 U.S. 264, 269, 3L.Ed. 2d 1217, 79 S.Ct. 1173 (1959), Chief Justice Warren wrote for the Court: " First, it is established that a conviction obtained through the use of false evidence, known to be such by representatives of the State, must fail under the Fourteenth Amendment; The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected." In Fields case the prosecution did solicit false evidence.

( Fields incorporates, by reference all of the facts and evidence of perjury throughout this petition.)

38

The Antiterrorism and Effective Death Penalty Act is Illegal and Unconstitutional because: (1). It abridge the rights of the people and violate the Constitution; (2). Any law that allows for open ended criminal violation(s) against the people abridge the rights of said people and is therefore Unconstitutional; (3). Any law that either directly or indirectly support the reckless disregard for human life is illegal and unconstitutional; (4). The AEDPA's restrictions forces the Court(s) to Aid and Abet criminal homicide ( in the pretense of justice ); (5). The AEDPA fail to provide for meaningful Appellate review in the event of a conviction and sentence of death; (6). The AEDPA's restrictions allow for discriminatory application; (7). The AEDPA's restrictions victimize the innocent; (8). If a defendant fail to bring a meritorious issue to the court before the one year statute of limitations imposed by the AEDPA concludes, for " whatever the reason may be ", then the defendant, whether he's guilty or innocent just have to die because the AEDPA restricts him from obtaining relief on that issue; (9). The AEDPA places Unconstitutional restrictions on the Court(s), barring them from acting " at any stage ", even where it's clear the defendant's Constitutional rights have been violated; (10). The AEDPA forces the Court(s) to ignore the violation of defendant's Constitutional rights; (11). It's illegal and Unconstitutional for Congress to make a law (AEDPA) that places their rush to finality before violations of the Constitution; (12). In the event an appeal is denied due to an unreasonable determination of the facts the AEDPA doesn't allow for honest adjudication on the merits; (13). When the AEDPA was enacted Congress failed to consider the off chance that Judicial bias at trial and on appeal would pollute the process; (14). The Court(s) definition of "extraordinary circumstances" and "extraordinary case" is Unconstitutionally vague, and Unconstitutionally limiting; (15). The AEDPA's restrictions allows for fundamental miscarriages of Justice.


## ARGUMENT


The facts here within Fields's case exposes the illegal and Unconstitutional defects in the Antiterrorism and effective Death Penalty Act. In Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 176, 2 L.Ed. 60 (1803), the Court held that " The powers of the legislature are defined and limited; and that those limits may not be mistaken, or forgotten, the Constitution is written." Thus Congress do indeed have

the right to make laws. But Congress don't have the right to make laws that abridge the rights of the people and violate the Constitution." The AEDPA's restrictions promote the willful and deliberate and knowing violation of Fields and other Capital defendants Constitutional rights. The law itself convey the message: " We don't care if your rights have been violated; We don't care if you're innocent, if you don't meet the one year statute of limitations imposed by the AEDPA we're going to murder you;" That stance alone regress the Death penalty rather than make it progressive.

In the case of Fields, he filed his Pro Se petition even before the statute of limitations were up and the 5th Circuit Court of Appeals rejected it because Fields " had attorney's." Fields even elected to "relieve counsel of their duty" so his brief could be heard, yet the 5th Circuit still refused. Counsel for Fields then filed a brief on Fields behalf. The 5th Circuit denied the issues presented in that brief based on an unreasonable determination of the facts, due in part to Fraud On the Court and Judicial bias. The 5th Circuit also alleged that Fields didn't assert issues that Fields clearly did assert...in the pro se brief that the Court refused to consider. Now Fields's impediment is the AEDPA; Thus Fields have been, and still is in a no-win situation because of this illegal and Unconstitutional law. When enacting the AEDPA congress didn't factor in a case like Fields where the District Court (Western District of Texas-Waco Division), and the 5th Circuit Court of appeals, by and through bias Judges illegally and Unconstitutionally denied Fields relief claiming that Fields couldn't show that false evidence was used against him; ( See App. 22 ), when in fact the evidence clearly shows that the prosecutions entire case was fabricated:

(a). The prosecution procured a law enforcement officer to lie and say that " there were no fingerprints ", when in reality there are fingerprints that exonerate Fields.

(b). The prosecution procured a law enforcement officer to lie and say that the reason they didn't find blood in the car that Fields was in on the night of the murder is because the car " looked detailed" or "wiped down", when in fact: (1). The forensic report show that the car was not clean; (2). The detective that lied isn't even a forensic expert; (3). The prosecutions real forensic expert didn't say nothing about the car looking "detailed" or "wiped down", rather he processed the vehicle and found fingerprints, dirt, debris, stains, etcetera; (4). The prosecutions real forensic expert admits that even if a vehicle is "detailed" or "wiped down" they have technology that would still find blood.

(c). The prosecution procured law enforcement officer(s) to lie and say that Tanesha Hilliard said that Fields became "angry" and/or "irate" when he came into contact with

the victim on the night of the murder, when in fact Tanesha Hilliard have always maintained that Fields was never angry, and as a matter of fact Fields and the victim were " hugging and kissing."

(d). After Shalaykea "Lakie" Scroggins, the woman that Fields said committed the murder alleged that Fields confessed to her via a phone call at 8:00 P.M. on November 15, 2001 Fields presented the phone records showing that there is no such call; The prosecution willfully defrauded the Court when he lied and told the jury that the reason the phone records don't show the call is because " phone records only show calls to cell phones."

(e). When Scroggins and her accomplice, Edward Lee "Treyboy" Outley conspired to hide the Gold Jaguar that they were in on the night of the murder, by falsely claiming that the Jaguar was blue, so the car wouldn't be subjected to forensic testing the prosecution again willfully defrauded the Court by lying, telling the jury that the Jaguar was indeed Blue, while knowing all along that the car was Gold.

(f). After Outley alleged that Fields confessed to him, but Fields never told him any details about the crime, a William "Skeeter" Young came forward and admitted that Outley told him that the victim was " shot in the head two times ". The only way Outley could know that was if he helped Scroggins murder Coleman. The prosecution willfully procured ATF Agent Douglas Kunze to commit perjury and say that William Young said that " he don't even know Outley ". However Outley and Young both admits that they do know each other. And as a matter of fact Outley once sold drugs for William "Skeeter" Young.

(g). An inmate Homero DeLeon claimed that Fields confessed to him because Fields was his cell mate. The prosecution should have known that DeLeon was lying, all they had to do was look at the jail records, Fields and Deleon have NEVER been cell mates; Fields didn't even know DeLeon and had never even seen him before until the day that DeLeon got up on the witness stand and lied.

(h). An inmate John Mercer wrote the prosecution a letter claiming that Fields confessed to him " because there are no TV's or newspapers in segregation so he and Fields talk." But at trial Mercer said that Fields didn't confess to him, he heard Fields confessing to a "Little D" and a "Little Mike". Yet there was no "Little D" or "Little Mike" to confirm or deny his story. And there are newspapers in segregation and everything Mercer testified to came out of the newspaper almost verbatim.

(i) After Outley wrote Walker, Christian Chae a letter telling him to lie and say that he gave Outley a gun to give to Fields, Walker lied at trial claiming that

41

he and Outley " don't talk about the case. Again, the prosecution knew that Walker was lying because when Walker went to the Grand Jury he admitted that he and Outley was down in the holding tank " talking about the case."

We could go on and on reciting the many acts of false evidence used to convict Fields, the false evidence that marred Fields's trial and defrauded the Court(s) on appeal is immense, thus the AEDPA restricting Fields from exposing the fact that the Court(s) opinion that Fields can't show that false evidence was used against him is not only clearly erroneous, but the product of bias Judge(s) abusing their discretion is a clear indication that the AEDPA is illegal and Unconstitutional.

Furthering that argument, when the 5th Circuit referred to the forensic experts testimony where he said that he found a "stain" that could possibly be blood, but refused to allow Fields to present that very same experts forensic report where he tested the alleged "stain" and it was not blood undoubtedly shows the Court(s) bias and the species of fraud perpetrated on the Court. Also the carpet with the alleged "stain" was sent for further testing and those tests also proved negative.

When the 5th Circuit refrenced detective Morris "Bubba" Colyer's false testimony where he claimed that the car "looked detailed" or "wiped down", but refused to allow Fields to present the forensic report showing that the car was not clean; And the 5th Circuit's refusal to consider Fields' brief refrencing this fact, along with the discovery Motion asking for the forensic photo's that will undoubtedly show that the car was not "detailed" or "wiped down" also highlights the Court(s) bias and the species of fraud perpetrated on the Court(s).

When the 5th Circuit "rubber stamped" the District Court's false opinion that Outley "didn't understand the question", when Outley lied and said that the government hadn't made him any promises, it also highlights the Court(s) bias and the species of fraud perpetrated on the Court(s).

When the 5th Circuit "rubber stamped" the district Court's false claim that Shalaykea Scroggins "never threatened the victim", when in fact the evidence clearly shows that she did threaten her, it highlights the Court(s) bias and the species of fraud perpetrated on the Court(s).

The facts of the case doesn't support the denial of Fields' Habeas Petition, and it exposes the debilitating flaws in the AEDPA. For Fields, an innocent man, the AEDPA forces the Court to Aid and Abet Fields' murder via lethal injection, which is a violation of the 5th, 8th, 9th and 14th Amendments to the United States Constitution.

The peculiar circumstances of the moment when congress enacted the AEDPA might have rendered the measure more or less wise, but it cannot render it more or less Constitutional, and there can be no question that it is the responsibility of the

Court to enforce the limits on Federal power [132 S.Ct. 2580] by striking down acts of Congress that transgress those limits. Marbury v. Madison, Supra, at 175-176, 2 L.Ed. 60. The question before the Court must be considered against the background of these basic principles. The AEDPA is volatile of the 5th., 8th, 9th and 14th Amendment(s) because the State and/or Governments misguided "right" to kill their citizens in the name of justice cannot be construed to deny or disparage the rights retained by the people under the United States Constitution. With the evidence presented herein there should be no doubt that Fields' death penalty was arbitrarily imposed. In Furman v. Georgia (1972) 408 US 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726, In a concurring opinion by Mr. Justice Douglas, it was stated that a penalty should be considered unusually imposed if it is aadministered arbitrarily or discriminatorily. Fields' case is "extreme", and " it is true that extreme cases often test the bounds of established legal principles, and sometimes no administrable standard may be available to address the perceived wrong. But it is also true that extreme cases are more likely to cross constitutional limits, requiring the Courts intervention and formulation of objective standards. This is particularly true when due process is violated. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 846-847, 118 S.Ct. 1708, 140 L.Ed. 2d 1043 [1998] [reiterating the due process prohibition on "executive abuse of power...which shocks the conscience"]. By permitting a death penalty statute to displace that of common sense and logic the AEDPA's appellate scheme has led to curious and potentially arbitrary outcomes. For example, almost all exonerations prevail on successive review after the Courts determine that guilt is conclusive and deny a defendants first round of appeals, including habeas. The AEDPA makes it virtually impossible to file a successive appeal, thus the innocent will die. See http:// www.innocenceproject.org/Content/Cameron__Todd__Willingham__ Posthumous__Pardon__Filing__Documents.php.

Mr. Willingham couldn't possibly be the only innocent man to meet this fate. The AEDPA reflects prejudice and antipathy- a view that ( even if someone is actually innocent ) they are not as worthy or deserving to prove such; For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, the law should be subjected to (rejection/repeal). Adhering to the AEDPA's strict restrictions in Fields case is a violation of Federal Law; (1) It will allow an innocent man to be murdered; (2) It allows the prosecution to act with the most egregious criminal intent; (3) And it totally decimates the integrity of the Federal Courts. In this instance the AEDPA's end result do not seem to square with our 8th Amendment jurisprudence. See Furman v. Georgia, 408 U.S. at 274, 92 S.Ct. 2726, 33 L. Ed. 2d 346 (1972) (Brennan, J., concurring ) ("In determining whether a punishment comports with human dignity, we are aided by [the principle] that the

State must not arbitrarily inflict a severe punishment"); Gregg v. Georgia, 428 U.S. 188, 96 S.Ct. 2909, 49 L.Ed. 2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.) ("Furman held that [the death penalty] could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner")., And they raise important concerns that are worthy of the Court's review. " Sensitivity to the injustice of incarcerating an innocent individual should not abate when the impediment is AEDPA's statute of limitations." Schlup, 513 U.S., at 324, 115 S.Ct. 851, 130 L.Ed. 2d 808. But injustice often prevail in the wake of AEDPA's constricting statute of limitations, which in turn makes the law illegal and unconstitutional.

## THE DEATH PENALTY IS ILLEGAL AND UNCONSTITUTIONAL

The death penalty is illegal and unconstitutional because the safeguards put in place in Gregg v. Georgia and its progency to protect not only the rights of the innocent, but the rights of all American people from wrongful conviction, (1). failed to protect Fields from an unreasonable determination of the facts; (2). fail to protect the innocent; (3). fail to protect defendants from Death sentences influenced by passion, prejudice and other arbitrary factors; (4). failed to protect Fields from Fraud On The Court; (5). failed to protect Fields from criminal act(s) orchestrated and carried out by the prosecution; (6). failed to protect Fields from Judicial bias; (7). failed to protect Fields from the prosecution violating Brady v. Maryland, and withholding impeachment and exculpatory evidence; (8). failed to protect Fields from the prosecution suborning perjury; (9). failed to protect Fields from witness perjury; (10). failed to protect Fields from the discriminatory application of the death penalty; (11). failed to protect Fields from the arbitrary application of the Death Penalty; (12). failed to protect Fields from a law (AEDPA) that abridge and violate his Constitutional rights; (13). failed to protect Fields Due Process rights; (14). The Death Penalty is Cruel and Unusual Punishment; (15). Fields incorporate by reference every reason from page one, herein to its conclusion; (16). The death penalty is illegal and Unconstitutional for every other known and unknown reason.

## ARGUMENT

44

The Supreme Court has long acknowledged that death is fundamentally different from any other punishment; Furman v. Georgia, 408 U.S. 238, 286-291, 92 S.Ct. 2726, 33 L.Ed 2d 346 (1972) (Brennan J., concurring); Gregg v. Georgia, 428 U.S. 153, 188, 96 S.Ct. 2909, 49 L.Ed. 2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.). " For that reason we have required States to apply special procedural safeguards to " minimize the risk of wholly arbitrary and capricious action " in imposing the death penalty. Gregg, 428 U.S. at 189, 195, 96 S.Ct. 2909, 49 L.Ed. 2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.); See also Ring v. Arizona, 536 U.S. 584, 614, 122 S.Ct. 2428, 153 L.Ed. 2d 556 (2002) (Breyer, J., concurring in judgment) (explaining that without adequate procedural safeguards, " the constitutional prohibition against ' cruel and unusual punishments ' would forbid [the] use" of the death penalty).

The facts in Fields case expose fatal flaw(s) in the death penalty that renders the Act illegal and unconstitutional. The lower court(s) unfettered discretion, bias Judge(s), and the Supreme Court's practice of taking less than 1% of "all cases" have led to discriminatory and arbitrary application of the death penalty, the very same unconstitutional impediment(s) that Gregg and its progency sought to prevent.

The Courts decision in 1976 upholding the constitutionality of the Death Penalty relied heavily on the belief that adequate procedures were in place that would avoid the danger of discriminatory application identified by Justice Douglas' opinion in Furman, id., at 240-257, 92 S.Ct. 2726, 33 L.Ed. 2d 346 (concurring opinion), of arbitrary application identified by Justice Stewart, id., at 306, 92 S.Ct. 2726, 33 L.ED. 2d 346 (same), and of excessiveness identified by Justices Brennan and Marshall. In subsequent years a number of Courts decisions relied on the premise that "death is different" from every other form of punishment to justify rules minimizing the risk of error in Capital cases. See, e.g., Gardner v. Florida, 430 U.S. 349, 357-358, 97 S.Ct. 1197, 51 L.ED. 2d 393 (1977) (plurality opinion). Ironically, however, more recent cases have endorsed procedures that provide less protections to capital defendants than to ordinary offenders.

Prosecutors know that in cases where there is no evidence connecting the defendant to the crime, like here in Fields, they can just solicit, procure and use false testimony/ evidence to obtain the conviction and it shifts the burden of proof onto the condemned. That, coupled with bias Judge(s) places an undue and impossible burden on the defendant and makes relief impossible.

The law is clear, prosecutors cannot knowingly use false testimony/evidence, yet they do and they did here and effectively "outsmarted" the intentions of Gregg and its progency.

(1). When Fields asked Outley did the prosecution make him any promises, Outley blatantly lied and said no. The prosecution didn't even attempt to try to correct him.

45

Then on appeal the trial Judge somehow concluded that Outley didn't understand the question, and the 5th Circuit " rubber stamped " the opinion, when it's clear that Outley did in fact understand that Fields was asking him if he'd received any promises in exchange for his testimony.

The letter that Outley wrote that spurred the question in ( App 50 ) states: " I could have got <u>5k1</u> but I didn't give Sherman anything and don't need no <u>Time cut.</u>

The operative words here are "5k1" and "Time cut". The District Judge on appeal and the 5th Circuit claimed that after Fields asked Outley had the government made him any promises " Fields didn't follow-up with the questioning ". But Fields did follow-up. See App 64 & App 65.  The following exchange took place:

Fields: --you indicate in this letter that you could have got a 5k1. Could you-- could you explain that?

Outley: Okay. A 5k1 supposed to be a down--some type of form of a downward departure for testimony.

Judicial bias led to Judge Smith and the 5th Circuit Court both handing down opinions that's inapposite the facts and the law; It's inapposite Smith v. Kemp, 715 F.2d 1159, 1463 (11th Cir.) cert. denied, 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed. 2d 699 (1983), that holds that " If false testimony surfaces during a trial and the government has knowledge of it, the government has a duty to step in and disclose." ( The government must affirmatively correct testimony of witness who fraudulently testifies that he has not received a promise of leniency in exchange for his testimony.) The prosecution knew they had made Outley a promise, thus it was their duty to correct him.
The Court(s) opinion(s) is inapposite Napue v. Illinois, 360 U.S. 264, 269, 3L. Ed. 2d 1217, 79 S.Ct. 1173 (1959), where Chief Justice Warren wrote for the Court, " First, it is established that a conviction obtained through the use of false evidence, known to be such by representatives of the State, must fail under the 14th Amendment; The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected." Judge Smith and the 5th Circuit Court(s) opinion(s) is also inapposite Giglio v. United States, 405, 150, 92 S.Ct. 763, 766, 31 L.Ed. 2d 104 (1972); Williams v. Griswald, 743 F.2d 1533, 1541 (11th Cir. 1984) because " the government has a duty not to use false testimony." The safeguards put in  place in Gregg and its progency failed to protect Fields from perjury, and the Court(s) discretion to overturn the wrong steered them in the direction of "ignoring the law". And when the Courts take that position it sets a dangerous precedent because it undermines the high Court and endangers the lives of American Citizens.

(2). When Shalaykea Scroggins claimed that Fields called her via telephone at 8:00 P.M. on November 15, 2001 and told her what's alleged to be the details of the murder, Fields presented her phone records to show that the call didn't exist. The prosecution then defrauded the Court, telling the jury that the reason the phone records don't show the call is because " phone records only show calls to cell phones." The prosecutor intentionally, deliberately, willfully and knowingly misled the jury because earlier in the trial the prosecution had introduced the victim's phone records to show how many times Fields called her from jail, and the victim's phone and the jail phone were land lines, not cell phones.

(3). When the victim's cousin, Tanesha Hilliard clearly states that Fields was never angry, the prosecution procured sheriff detective Johnny Spillman and U.S. Marshal Chris Casson to lie and say that " Tanesha Hilliard said that Fields became angry when he came into contact with the victim," in order to give the false impression that "anger" was the reason " Fields killed Coleman."

(4). When Shalaykea "Lakie" Scroggins and Edward Lee "Treyboy" Outley conspired to hide the car that they were in when Fields said they Outley and Scroggins killed Coleman, the prosecution defrauded the Court again and tried to make the jury believe that they were indeed in a "BLUE" Jaguar that (a). The prosecution already knew didn't exist in 2001 when Coleman was killed; And (b). While knowing all along that Outley and Scroggins was in a GOLD Jaguar.

(5). When forensics found no blood in the Grand Am that Fields was driving on the night of the murder, the prosecution procured sheriff detective Morris "Bubba" Colyer ( a non-forensics expert ) to lie and say that the reason they didn't find blood is because the car "looked detailed" or "wiped down", when (a). The forensic report clearly show that the car wasn't clean; (b). The prosecution withheld the photo's that will show that the car wasn't clean; And (c). Forensics have technology that would have still found blood.

(6). On appeal the 5th Circuit denied COA alleging that Fields didn't reference the fact that the detective said that the car "looked detailed" and that there was "stains" that could possibly be blood.
However Fields did in fact reference detective Colyer's false testimony about the car looking "detailed". Fields also provided the forensics report disputing the false testimony, as well as a motion for discovery for the withheld forensic

Photo's. Fields also presented evidence showing that the alleged stain(s) had been tested and it wasn't blood, along with voluminous other evidence proving that the prosecution <u>entire case</u> was fabricated; The 5th Circuit refused to consider it.

(7). The prosecution led a detective January into perjury, claiming that there was " no fingerprints " in the alleged carjacking vehicle, " this thing was clean," when in fact there were eleven latent prints, all of AFIS quality, the prints were checked against Fields and there was no match.

The perjury, fraud, deception, prosecutor misconduct, Judicial bias goes on and on, proving that despite the safeguards put in place in Greg and its progency those safeguards can never protect the people from willful, intentional and deliberate human error which makes the Death Penalty illegal and Unconstitutional. The evidence in this petition clearly establish that false evidence was used to convict Fields with intentions of murdering him via lethal injection in the pretense of Justice, yet the Court(s) concluded that " Fields can't show that false evidence was used against him," and then denied Fields the chance to prove it.

What history have taught us all with the recent number of exonerations is that a guilty verdict and the exhaustion of appeals doesn't always mean that the condemned is Actually Guilty. ( See Brief at www.law.northwestern.edu/wrongfulconvictions/How snitch testimony sent Randy Steidl and other innocent Americans to Death Row).
In Weems v. United States (1910) 217 US 349, 54 L.Ed 793, 30 S.Ct. 544, it was recognized that the eighth amendment prohibition against cruel and Unusual punishments was not intended to prevent only an exact repetition of history." It was intended to prevent all cruel and unusual punishment, yet the arbitrary and discriminatory nature of the death penalty allows for history to repeat itself over and over again. In Godfrey v. Georgia, 64 L.Ed. 2d 398, 446 U.S. 420; " On numerous Occasions " the court found, " since Gregg v. Georgia the Court have been presented with at least one petition a week for certiorari raising troubling issues of noncompliance with the strictures of Gregg and its progency., the Court have reversed decisions of State Supreme Courts upholding the imposition of Capital punishment, frequently on the ground that the sentencing proceeding allowed undue discretion, causing dangers of arbitrariness in violation of Gregg and its companion cases. These developments, coupled with other persuasive evidence strongly suggests that appellate courts are incapable of guaranteeing the kind of objectivity and evenhandedness that the Court contemplated and hoped for in Gregg. The disgraceful distorting effects of racial discrimination and poverty continue to be painfully visible in the imposition of death sentences." Along with perjury, fraud, prosecutor misconduct, Judicial bias and more. The deliberate indifference to and reckless

disregard for Fields' right to life and personal security, and the deprivation of his substantive due process right to life under the Federal Constitution's Fourteenth Amendment is painfully obvious here. The prosecution "seeking jailhouse testimony", trying to procure Outley and/or Scroggins to lie and say that they were " with Fields ", and trying to procure Chance Alexander to lie and say that Fields confessed to him while seeking to end Fields' life, and ultimately obtaining the conviction on a strictly "jailhouse testimony" case shines a glaring light on why the death penalty is illegal and unconstitutional.

It's also very clear that the Court(s) have completely ignored the true facts and the law, denying Fields relief based on an Unreasonable determination, due to Judicial bias and Fraud On the Court, things that Gregg and its progency didn't anticipate.

The conclusion is virtually inescapable that the death penalty is being inflicted arbitrarily, it is imposed discriminatorily against certain identifiable classes of people; there is evidence of racial discrimination; there is also overwhelming evidence that the death penalty is employed against men and not women; and that the burden of Capital punishment fall upon the poor, the ignorant, and the underprivileged members of society.

Again, it's regressive rather than progressive as the law(s) of our nation is meant to be and it do more harm than it do good. In Lackey v. Texas, 514 U.S. 1045, 115 S.Ct. 1421, (quoting) Gregg, the Court held that the Eighth Amendment does not prohibit Capital Punishment because, (1). The Death Penalty was considered permissible by the Framers, see id., at 177, 96 S.Ct., at 2927 (opinion of Stewart, Powell, and Stevens, JJ.) and (2). The death Penalty might serve "two principle social purposes: retribution and deterrence," id. at 183, 96 S.Ct., at 2929-2930. That "argument" should no longer be permissible. The Framers of our Constitution had some good ideals and some very very bad ideals. And just like Slavery, the Death Penalty is one of those very very bad ideals. The parallel's between the two are uncanny; Slavery, just like the Death Penalty was born out of, what would be today a violation of the United States Constitution. When "the Framers" implemented the Death Penalty minorities and women alike were both suppressed, neither could vote, thus the Death Penalty is the "brainchild" and was considered permissible by the Anglo American male, and the Anglo American male alone, which violates the equal protection clause of today, due process, and it renders the Death Penalty Cruel and Unusual. Just because Congress went in and amended and and tweaked the Constitution it doesn't mean that it is now fair and balanced and it don't victimize the people. If you build a new house on a broken foundation that house is still doomed to fail. Here in Fields case eleven of the twelve jurors held that "[t]he imposition of a death sentence would cause emotional injury, harm and loss to Fields' mother, children and other family members." ( See App. 80    ). Inflicting this type of

49

injury on your own citizens in any context is a violation of the United States Constitution, thus the Death Penalty abridge the rights of the people; Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 176, 2L.Ed. 60 (1803). And in Furman v. Georgia, Justice Stewart concluded that the 8th Amendment cannot tolerate the infliction of a death sentence under a legal system that permits this unique penalty to be wantonly and freakishly imposed. Id., at 310, 92 S.Ct. 2726, 33 L. Ed. 2d 346. However that is exactly what's happening, the jury recognize that killing Fields would abridge the rights of Fields's family, but vote to violate their Constitutional rights anyway " because Fields isn't their loved one." If Fields was their Father, brother, loved one then the Death Penalty would be "cruel and unusual punishment", and they would want it to be held as being "cruel and unusual punishment".

In Kennedy v. Louisiana, (2008) 554, U.S. 407, 128 S.Ct. 2641, 171 L.Ed. 2d 525, the Court held that Capital punishment is excessive when " it does not fulfill two distinct social purposes served by the death penalty (retribution and deterrence). It's a widely known fact that the death penalty is not a deterrent to crime, and in Fields case Dr. Richard Coons, the psychiatrist that told the jury that if they don't kill Fields he would be " a future danger ", was later held to be a fraud in another case, the 5th Circuit noting that Dr. Coons would say whatever the person paying his bill wanted him to say. Which leaves retribution standing alone, and retribution without deterrence is nothing more than " a revenge killing," which is also a violation of the United States Constitution and the ban on Cruel and Unusual punishment. Mr. Justice Douglas in McLamore v. South Carolina (1972)-US-, 34 L.Ed. 2d 189, 93 S.Ct. 240 states that " wherein it was stated that the concept of cruel and unusual punishment was not rigid, but progressive; that it required meaning as the public became enlightened; Chief Justice Warren, joined by Mr. Justice Black, Douglas and Whittaker, in Trop v. Dulles (1958) 356 US 86, 2 L.Ed. 2d 630, 78 S.Ct. 590, held that "the scope of the words of the cruel and unusual punishment clause was not static; and that the eighth amendment had to draw its meaning from the evolving standards of decency which marked the progress of a maturing society." The operative words here are "progressive" and "the evolving standards of decency". In Weems v. United States, (1910) 217 US 349, 54 L. Ed. 793, 30 S.Ct. 544, it was recognized that the eighth amendment prohibition against cruel and unusual punishments was not intended to prevent only an exact repitition of history; that the possibility of a coercive cruelty being exercised through other forms of punishment was not overlooked; and that the cruel and unusual punishment clause could be progressive and was not fastened to the obsolete, but could acquire meaning as public opinion became enlightened by a humane justice." The fact that retribution alone have turned into revenge is magnified by the recent botched executions where inmates were literally tortured to death for hours on end via lethal injection, and/or the suggestion by a Wyoming senator that we regress and that death row inmates should

50

be lined up in front of a firing squad like the terrorist group ISIS do to those that they consider to have committed crimes against Islam; Or the suggestion by a Ninth Circuit Judge that the Country should regress, get rid of lethal injection and decapitate inmates, again, just like the terrorist group ISIS. The torture of human beings, homicide via firing squad and/or decapitation is only wrong when terrorist do it? Or is it wrong in any situation? In any event it's not progressive, nor does it comport with the "evolving standards of decency". The Death Penalty is Cruel and Unusual because it places an impossible burden on our future; Just as today we apologize to no end for what our ancestors did during slavery, our kids will spend their future apologizing for what the Death Penalty is doing to the poor; For that reason the Death Penalty is regressive and an exact repitition of history and it violates the ban on Cruel and Unusual Punishment. But here in the instant case the Death Penalty is Cruel and Unusual, Illegal and Unconstitutional because, (1). Fields is innocent; (2) Everything that exonerates Fields the prosecution countered with a lie and defrauded the Court(s). (i.e) Phone records only show calls to cell phones; Outley and Scroggins was in a BLUE Jaguar on the night of the murder; There were no fingerprints in the alleged carjacking vehicle; The Grand Am that Fields was in on the night of the murder was "detailed" or "wiped down"; Fields became angry when he came into contact with the victim; Scroggins never threatened the Victim; etcetera, etcetera, etcetera.

The safeguards put in place in Gregg and its progency couldn't foresee the "extraordinary case" like Fields, nor can it protect future defendants from being fatally harmed by prosecutorial misconduct, witness perjury, or Judicial bias therefore the Death Penalty is unconstitutional because there is no way to reign in the open ended  violation(s) of the people's Constitutional Rights. For those reasons, and all of the aforementioned reason(s) throughout this petition the Death Penalty should be deemed illegal and Unconstitutional.

CONCLUSION

Petitioner believes that Congress overstepped their bounds with the AEDPA; Any law that hinders a defendant(s) right to be free of tyranny, cruel and unusual punishment, the equal protection of the law and due process rights is illegal and Unconstitutional; Marbury v. Madison; Supra. Fields was diligent pursuing his right to have the issues herein heard by an appeals Court but was thwarted every step of the way by bias Judge(s) and prosecutor(s) committing Fraud Upon the Court system, yet because of the AEDPA's one year statute of limitations AEDPA is Fields'

impediment. The AEDPA allows for open ended criminal violations against the people. The evidence herein this petition undoubtedly proves that the prosecution suborned perjury, the prosecution "witnesses" committed perjury, there was indeed a criminal conspiracy to use false evidence to frame Fields for Coleman's murder and other charges, the prosecution solicited Fields' murder via lethal injection, the prosecution defrauded the Grand Jury, the trial Court and the Appeals Court, bias conclusively, racial and otherwise marred the trial and the appellate process, and the AEDPA restricts Fields from getting the relief that the United States Constitution demands; Thus the AEDPA is illegal and Unconstitutional.

Fields have a right not to have his due process rights violated; Fields have a right to be free of Cruel and Unusual punishment; Fields have a right to equal protection of the law; Fields have a right to be free of tyranny; And as a United States Citizen Fields have a right to have any criminal act(s) perpetrated against him adressed by a Court of law, yet the AEDPA abridge those rights making it impossible for Fields to get relief; Thus the AEDPA is Illegal and Unconstitutional.

When a defendant can show "at any stage" that his Constitutional rights have been violated and because of those violations he will suffer irrepairable harm or death yet he can't get relief because the AEDPA is his impediment, the AEDPA is then directly and/or indirectly supporting the reckless disregard for human life; Thus the AEDPA is illegal and Unconstitutional.

The AEDPA demands that minus a new rule of Constitutional law a defendant have to be Actually innocent in order to get relief after the one year statute of limitations have ran its course, yet history have taught us all that even the innocent fail to prove it before the exhaustion of his/her appellate process; The AEDPA fail to provide for meaningful appellate review in the event of a death sentence and deny defendant's the equal protection of the law that non-death sentenced inmates have; Thus the AEDPA is illegal and Unconstitutional.

In a case like Fields the AEDPA restrictions forces the Court(s) to aid and abet criminal activity, to include criminal homicide (in the pretense of Justice); Thus the AEDPA is illegal and Unconstitutional.

The prosecution "seeking jailhouse testimony", defrauding the Court, suborning perjury, engaging in a criminal conspiracy, soliciting Fields' murder via lethal injection, along with bias Judge(s) at trial and on appeal shows that Fields was discriminated against. The AEDPA's restriction's allow for discriminatory application of the Death penalty; Thus the AEDPA is illegal and Unconstitutional.

Minus the Constitutional violation(s) Fields is Actually and Factually innocent. The AEDPA's restrictions victimize the innocent; Thus the AEDPA is illegal and Unconstitutional.

Fields was diligent in his pursuit to file his timely meritorious Pro Se brief

52

but was thwarted where the law of the 5th Circuit was so firmly against him; See Morales v. Bezy, 499 F.3d 668 (7th Cir. 2007). The Court then denied the brief that Counsel for Fields filed alleging that Fields didn't assert issues that was clearly in the brief that the 5th Circuit rejected, now Fields' impediment from getting relief on his meritorious issues is the AEDPA. This is a blatant disregard of Fields' Constitutional rights; Thus the AEDPA is illegal and Unconstitutional.

The AEDPA restricts the Court(s) from acting on the blatant disregard for Fields' Constitutional rights; Thus the AEDPA is illegal and Unconstitutional.

The AEDPA forces the Court(s) to ignore the violation of Fields' Constitutional rights; Thus the AEDPA is illegal and Unconstitutional

Congress failed to anticipate every possibe hypothesis when they enacted the AEDPA and because of that the AEDPA abridge the rights of the people and violate the Constitution; Thus the AEDPA is illegal and Unconstitutional.

The language accompanying AEDPA, (i.e) "extraordinary circumstances" is Unconstitutionally vague and Unconstitutionally limiting. Fields was diligent pursuing his rights, yet he was hindered by bias Judge(s) whom refused to consider his timely and meritorious pro se brief and motion(s), denied COA based on an Unreasonable determination of the facts, Fraud and other criminal act(s) marred the appellate process, and AEDPA is now Fields' impediment even where the need for redress is evident, and the errors herein reveal a fundamental defect that if left uncorrected will result in a "complete miscarriage of justice" and will be inconsistent with the rudimentary demands of fair procedure; Thus the AEDPA is illegal and UnConstitutional.

The AEDPA's restrictions make the Death Penalty illegal and Unconstitutional. And the facts of Fields' case makes the Death Penalty illegal and Unconstitutional. The Death Penalty is illegal and Unconstitutional in all cases. Despite the safeguards put in place in Gregg v. Georgia and its progency the death penalty is still being administered discriminatorily and arbitrarily, the innocent is still being convicted and sentenced to die. See Willingham; Supra and Timothy Cole(5th Cir.) Fields' case show that prosecutors and bias Judge(s) know how to "outsmart" Gregg and its progency, violating due process and inflicting cruel and unusual punishment on the people; this creates discord with the fifth, eighth and fourteenth amendments to the United States Constitution. This new insight also reveals discord between the Constitution's central protections and our Founding fathers very very bad ideal to implement a Death Penalty that would murder American citizens. Our Founding Fathers,and later Congress, both ignored the obvious which is: No matter how one try to fashion a "death penalty" it would always violate the Constitution by abridging and/or disparaging the rights of the people, in which is Unconstitutional by any standard. Fields' case proves that the safeguards put in place in Gregg v. Georgia is ineffective to protect against

53

wrongful conviction, and without adequate safeguards " the constitutional prohibition against 'cruel and unusual punishments' forbid [the] use of the death penalty "; See Ring v. Arizona; Supra. Simply put, there is just no way that Congress or the Court(s) can guarantee that prosecutorial misconduct, criminal act(s) committed by prosecutor's, police and witnesses, witness perjury and/or judicial bias will not corrupt the judicial process and cause the death of the innocent. And even in what is considered a "fair" proceeding the end result of death still abridge and/or disparage the rights of the American People by subjecting them to cruel and unusual punishment in the form of emotional harm, injury and loss to the condemned person(s) loved one's.

Fields believes that the Court should revisit the Constitutionality of the Death Penalty, the Constitutionality of the Antiterrorism and Effective Death Penalty Act, and view it in the context of these basic principles, along with its contradiction to the 5th, 8th, 9th and 14th Amendments to the United States Constitution, and the backdrop of Marbury v. Madison; Supra.

Also the Death Penalty and the AEDPA should be viewed in the context of the true fact(s) of Fields' case. Fields is an innocent man that was knowingly, willfully, deliberately and intentionally wrongfully convicted, with malice aforethought, and further harmed through the appeals process by and through Fraud On the Court(s) and Judicial Bias, thus making the safeguards put in place to protect from wrongful conviction in Gregg v. Georgia and its progency ineffective. There should be no greater "extraordinary circumstance" than when prosecutor's commit criminal act(s) to obtain and maintain a conviction and/or the bias of Judge(s) that mar the criminal Court proceeding(s) because those very same criminal act(s) is also perpetrated against the judicial system and it tarnishes the integrity of the Justice system. Under U.S. Const. Art. III, § 1, " some elements of the inherent authority are so essential to 'the judicial power' that they are indefeasible ", meaning this Court can rectify this wrong if it so choose. Fields have been fatally harmed and if this Court refuse to entertain the issue(s) herein it would result in a fundamental miscarriage of justice. Sawyer v. Whitley, <u>505 US 333</u>, <u>120 L.Ed. 2d 269</u>, 112 S.Ct. 2514 (1992) ( That will never be rectified ). Thus this, and the facts of Fields' case makes the AEDPA illegal and Unconstitutional because the AEDPA would be Fields' impediment. Fields would be murdered (in the pretense of Justice), which also makes the Death Penalty illegal and Unconstitutional. " By the protection of the law human rights are secured; withdraw that protection and we are at the mercy of wicked rulers, or the clamors of an excited people "; Walberg v. Israel, 766 F.2d 1071, 1078 (7th Cir.) (Posner J.), cert. denied, 474 U.S. 1035 (1985). Fields asks this Court to use its supervisory powers to stop this miscarriage of Justice and to deter any further illegal conduct. Bank of Nova Scotia v. United States, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed. 2d 228 (1988).

For the reason(s) stated herein, Fields asks that this Court grant this "extraordinary writ".

Signed this ___*19th*___ day of ___*October*_____ 2015

Sincerely/Respectfully

Sherman Lamont Fields
#15651-180
USP Terre Haute
P.O. Box 33
Terre Haute, Indiana
47808

55